## R. C. IRWIN v. B. R. MILLER.

1. LIEN ON CROP. *Ginning cotton.*   *Code* 1892, § 2682.

> Under § 2682, code 1892, giving to every employe or other person who may aid by his labor to make or prepare for market any crop, a lien thereon, paramount to all others except that of the landlord, a ginner to whom cotton is delivered by the owner, and who gins the same, has a lien thereon for his charges.

2. SAME. *Enforcement of lien. Part of crop held for ginning whole.*

> Where, under an arrangement between the parties, the charges are not paid as they accrue, but the cotton, as ginned, is received by one who has a trust-deed on it, the ginner may, even as against such person, hold the last lot to satisfy his charges for ginning the entire crop. *Lumbley* v. *Thomas*, 65 Miss., 97, cited.

FROM the circuit court of Tunica county.

HON. R. W. WILLIAMSON, Judge.

The opinion sufficiently states the case.

*Lowe & Cochran,* for appellant,

Filed a brief, citing many authorities to show that appellant had a common law lien on the cotton; but, as the court adopts the view that a lien existed by virtue of the statute, the authorities are not given.

The three bales of cotton held by appellant were liable for the ginning of the whole crop. See *Schmidt* v. *Blood,* 24 Am. Dec., 143 and notes; *Steinman* v. *Wilkins,* 42 *Ib.,* 254. To hold that the ginner must look to each bale for his charges might prove injurious to all parties concerned. Under such a rule, the ginner would have to tie up the whole crop in order to get his mite for ginning each bale.

*St. John Waddell* and *Johnston & Johnston,* for appellee.

There was no statutory lien in favor of appellant. His alleged lien upon the three bales of cotton rested purely on the common law, under which he had a specific lien on each bale as ginned for the charges on that bale. 1 Jones on Liens, § 15; 15 Mass., 389; 6 Term R., 258; 4 Burr., 2214.

There was simply a running account between Irwin and Donnell for ginning, on which Donnell paid periodically. It is not a case in which labor was bestowed upon a quantity of articles under an entire contract.

Fulmer's trust-deed was on record, and all persons were charged with notice of the lien thereon. Even an express agreement between Irwin and Donnell, that the latter should hold the cotton for ginning charges due him, would have been inoperative as against the holder of the trust-deed.

COOPER, C. J., delivered the opinion of the court.

In April, 1893, one Donnell executed a deed of trust upon his crops to be grown that year to secure the payment of certain debts therein described to J. D. Fulmer, which deed was, on that day, recorded. When, and as, the cotton was gathered it was carried by Donnell to the gin of Irwin, and by him pre-

pared for market, the ginning charges being three dollars per bale. Irwin did not assert his lien against each lot of cotton as it was delivered to him and ginned, but permitted Donald to carry away the cotton as ginned, to be by him shipped to Fulmer. The last lot of cotton consisted of five bales, and, including the ginning charges on this lot of cotton, there was due Irwin the sum of $63.79 as a balance of his charges for ginning the crop. Of these five bales, Donnell either sold three bales to Irwin in payment of the account, or left it in his possession until they should agree upon the price. Irwin testified that he considered the sale as completed, while Donnell says he understood that he was to return the following morning and complete the sale. The cotton was then on the platform, but both Irwin and Donnell state that it was in Irwin's possession. A few days thereafter, Miller, the trustee in the deed of trust given by Donnell to secure the debt to Fulmer, went to the agent of the railroad, and, claiming to be entitled to control the cotton under the deed, secured a bill of lading for it, and directed it to be shipped to Fulmer. He tendered to Irwin the sum of nine dollars, the same being the charges for ginning the three bales, which Irwin declined to receive, and sued out a writ of replevin for the cotton. In the court below a jury was waived, and the cause tried before the judge, who rendered a judgment for the defendant, and the plaintiff appeals.

The case is argued by counsel here, and we suppose it was so conducted in the court below, as though Irwin's right of recovery depended upon the existence or nonexistence of a common law lien upon this cotton for his charges in ginning it and other cotton. The contention of counsel for the appellee is, that Irwin's charges for ginning other cotton than the five bales of which the three in controversy was a part cannot be fixed upon the three bales, because all other cotton was delivered upon distinct and separate bailments, and, by parting with possession of such other cotton, the lien was lost, and could not be transferred to the cotton last ginned. It is probable

that the court was controlled in its decision by this contention, for it is not suggested by counsel for appellant that appellant had any other than a common law lien, the effort of counsel being directed to showing from the evidence that there was, in effect, but one continuing bailment of the whole crop.

The right of the appellant, however, does not rest upon a common law lien, and the learning on that subject, and the priority of right asserted by appellee by reason of his claim under the recorded deed, are not relevant in this controversy. By the code of 1892, § 2682, it is, *inter alia*, provided that "every employe, laborer, cropper, part owner, or other person who may aid by his labor to make, gather or prepare for sale or market any crop, shall have a lien on the interest of the person who contracts with him for such labor for his wages, share or interest in such crop, whatever may be the kind of wages or the nature of the interest, which lien such employe, laborer, cropper, part owner or other person, may offset, recoup or otherwise assert and maintain. And such liens shall be paramount to all liens and incumbrances or rights of any kind created by or against the person so contracting for such assistance, except the lien of the lessor of the land on which the crop is made for rent and supplies furnished, as provided in the chapter on landlord and tenant." The primary and principal purpose of this section is to afford security to agricultural laborers—those engaged in planting, cultivating, gathering and preparing the crops for market. But neither in letter nor spirit is it confined in its operation to laborers of that class. The lien is not given only to the laborer, employe, cropper or part owner, nor to those only who make, gather and prepare the crop for market. It is also given to any other person—*i. e.*, to persons other than employes, laborers, croppers or part owners—who may aid by their labor to make, gather or prepare for sale or market any crop. The crop most generally grown in this state, and the crop grown for market, consists almost wholly of cotton, and this is prepared

for market by ginning, without which it cannot be put in its commercial condition. The very common practice, in many parts of the state, is to have the cotton ginned at neighborhood gins, or at gins in the villages and at railroad depots. By the strict letter of the statute the lien is given to those who, by their "labor, aid" to make, gather, or prepare the crop for market, and the lien is given for "whatever may be the kind, wages or nature of the interest" of the lienor. But, in view of the nature of the commodity and the very general custom of the country in its preparation for market, it is not reasonable to suppose that the statute intended to give a statutory lien for the labor expended about the ginning and leave the ginner to his common law lien for the price charged for the use of his machinery. The better view is that a statutory lien is given for the whole charge.

We are not to be understood as deciding that one who gins the cotton of a planter thereby acquires a lien on the other crops of a different character grown by him, nor that the lien extends to other cotton not prepared for market by the owner of the gin, nor that the lien exists after the ginner parts with possession of the property. We decide only that the lien of the ginner is given by law; that it is superior to all other liens or incumbrances, except that of the landlord, and that it is within the power of the owner of the cotton, though it be under mortgage, to so arrange with the ginner as to fix the lien upon any portion of the crop as security for his charges for ginning the whole. We speak, of course, with reference to the facts involved in this case, in which no injury to third persons results from the execution of the agreement between the parties. Fulmer, the beneficiary in the deed of trust, suffers no loss or injury by reason of the fact that the cotton first ginned was turned over to Donnell without payment of the charges against it and the cotton in controversy held for the whole amount. Read in their broadest sense, the words of the statute give a lien on the whole crop for work done on any part of it, and, in

case of a laborer, it has been so applied. *Lumbley* v. *Thomas,* 65 Miss., 97. A much more restricted construction upholds the lien here asserted.

*The judgment is reversed.*