## N. B. LANGFORD *v*. B. F. LEGGITT.

[54 South. 856.]

1. WAGES OF OVERSEERS. *Lien on agricultural products. Code* 1906, *section* 3042.

Where an overseer is hired by the year and wrongfully discharged before the termination of his contract under Code 1906, section 342, giving a lien on crops to overseer, etc., he has a lien for his wages already earned and those he would have earned until the expiration of his contract less any earnings after his discharge.

2. SAME.

And this is true even though at the time of the overseer's discharge he owed his employer more than the wages due at that time.

APPEAL from the circuit court of Madison county.
HON. W. A. HENRY, Judge.
Suit by B. F. Leggitt against N. B. Langford. From a judgment for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*Reid & Foote,* for appellant.

Does the lien of the statute attach for the wages not actually earned; for the wages not actually due for actual labor?

This lien did not exist at common law, and as it is derogatory of the common law, an employee to obtain its protection must come within its express terms.

We contend that the wages must be due for work actually done to entitle a laborer to its protection.

The reason of the enactment is in the fact that the laborer by his work or skill makes the security himself; actually creates the cotton or corn as the case may be, and as it is the product of his labor, his creation, he should be first paid before all others, except the lessee of the land. Paid for what? His part in its creation, for the part he actually took in making it.

So much of the product as represents his work, for that part, and that part only can he claim this lien.

The statute says in effect, "You have put so many dollars represented by so many days at so much a day in this cotton, you may take that out first."

Section 3042 makes this lien of the laborer "paramount to all liens and incumbrances or rights of any kind created by or against the person so contracting for such assistance except the lien of the lessor of the land on which the crop is made, for rent and supplies furnished."

An employer may give a chattel mortgage to a merchant on his crops and on the strength of same obtain all the supplies and advances necessary to make a crop, but even this mortgage would be inferior to the lien given the employee, under this section, who aids by his work in making the crop. Why? Because, and properly so, the laborer has actually created the merchant's security, and should be paid first.

But in the case at bar, appellee has been paid for the part he took in creating the security, and for this breach

of contract should stand with the other unsecured creditors.

An employer may employ one for twelve (12) months and discharge him after a day, wrongfully, and employ another who does all the work; makes the crop; will the employee who actually works all the year have to share the security with the one who puts in only a day? Such a construction as this would defeat entirely the purpose of the statute, viz.: Protecting the man who does the work, and bears the brunt.

Obviously the lien only attaches for wages representing actual work.

*W. H. & R. H. Powell,* for appellee.

Code 1880, section 1360, provided that, ''And every employee, laborer, cropper, part owner, or other person who may aid by his labor to make, gather or prepare for sale or market any crop, shall have a lien on the interest of the person who contracts with him for such labor for his wages, share or interest in such crop, whatever may be the kind of wages or the nature of such interest, etc.'' No writing or record is required to validate the contract.

It was held in *Weise* v. *Rutland,* 71 Miss. 933, that an overseer or manager, under this broad language, was embraced by the statute and the court in concluding the opinion on page 936 says: ''And it is difficult to conceive of a class which would more naturally or justly fall within the scope of the added language than that to which the appellee belongs.''

Code 1892, section 2682, is the same as section 1360, Code 1880.

Laws 1894, page 61, amended section 2682, Code 1892, by adding the words ''overseer or manager'' and thus by legislative act embraced them also as parties who were entitled to the lien, this court by construction hav-

ing held that they were embraced under the Codes 1880 and 1892, *supra.*

Code 1906, section 3042, is the same as laws 1894, *supra,* and embraces "overseer or manager." *Buck* v. *Payne,* 52 Miss. 271.

In *Powell* v. *Smith,* 74 Miss., page 151, this court says: "The policy of the statute is to make sure to the laborer his wages." And in *Irwin* v. *Miller,* 72 Miss., at page 177, that "The primary and principal purpose of this section (2682) is to afford security to agricultural laborers;" in which case the benefit of the lien was extended to a ginner. In view of the fact that our people are mainly agriculturists, and of this unbroken course of legislation and decision it is impossible to hold that the lien of the employee or other person does not have equal scope with that of the landlord. The inconveniences, real or supposed, to flow from this—the argument *ab inconvenienti*—whatever aiding course they may furnish the construction of statutes of doubtful meaning can have none at all where the statute is clear and positive. If there be considerations which outweigh the present declared "policy of the statute," in favor of a change to a different one, these are to be addressed to the legislature."

The contention that the wages must be due for work actually done is utterly without merit. The statute does not so require.

Argued orally by *E. Mayes,* for appellees.

MAYES, C. J., delivered the opinion of the court.

On the 5th day of October, 1910, B. F. Leggett began a suit by attachment, in a justice court of Madison county, against N. B. Langford. In the affidavit praying for the attachment it is stated that Leggett was employed by Langford, during the year of 1910, as overseer on a certain plantation in Madison county, and as such Leggett assisted in making a crop of cotton and

corn; that these agricultural products were in the possession of Langford; and that affiant, by virtue of the contract and service thereunder, is entitled to a lien on the agricultural products named above to the amount of one hundred and eighty-five dollars, being the amount which Langford is due affiant for services as overseer, and which he fails to pay. After the filing of the affidavit, a writ of attachment was issued and levied on three bales of cotton, raised on the plantation in question and claimed by Langford, valued at something over sixty-six dollars each; the cotton then being in the possession of Langford, as alleged in the affidavit. Leggett recovered a judgment for the amount sued for, and Langford prosecuted an appeal to the circuit court.

The facts are virtually agreed to and are about as follows: It is agreed that in January, 1910, Langford employed Leggett as manager and overseer of a plantation in Madison county, upon which cotton and corn was raised during the year. Leggett seems to have been employed by the year, and was to be paid forty dollars a month. Leggett commenced work in January, and continued at work under the contract until some time in April, when Langford wrongfully discharged him. At the time Leggett was discharged, he owed Langford more than the amount which he had then actually earned under the contract. In short, at the actual date of the wrongful dismissal of Leggett, he then owed Langford more than the amount of his wages; but, deducting all that Leggett owed Langford from the total amount that would be owing Leggett at the end of the year, Langford was indebted to him at the date of this suit in a balance of one hundred and eighty-five dollars.

The real question in the case is whether or not, under section 3042, Code of 1906, an overseer has a lien on the agricultural products grown upon the place on which he was employed to work, where there is a breach of the contract of employment by the employer by wrongfully

discharging the overseer before the expiration of his contract of employment. It does not appear to us that the question is one of serious difficulty. It might be stated that the real question is whether or not the maxim of law "that no man shall profit by his own wrong" shall be suspended when it is sought to apply it to the case of an employer, who by his own wrongful act has injured his employee. Even if the statute did not cover this case, we can see no reason for not applying the maxim to this case, as well as in any other case. Section 3042 of the Code of 1906 provides that: "Every employee, laborer, cropper, part owner, overseer or manager, or other person who may aid by his labor to make, gather, or prepare for sale or market any crop, shall have a lien on the interest of the person who contracts with him for such labor for his wages, share or interest in such crop, whatever may be the kind of wages or the nature of the interest, which lien such employee, laborer, cropper, part owner, overseer or manager, or other person may offset, recoup or otherwise assert and maintain. And such lien shall be paramount to all liens and incumbrances or rights of any kind created by or against the person so contracting for such assistance, except the lien of the lessor of the land in which the crop is made, for rent and supplies furnished, as provided in the chapter on 'Landlord and Tenant.'"

It is argued by counsel for appellant that, in order for the statute to apply, it must be for "wages due for work actually done;" and say counsel: "The reason of the enactment is in the fact that the laborer by his work or skill makes the security himself, actually creates the cotton or corn, as the case may be; and as it is the product of his labor, his creation, he shall be first paid before all others, except the lessor of the land." It is quite true that the theory of the statute proceeds upon the idea that the laborer will work and create, but it also proceeds upon the idea that after he has contracted

so to do the employer will not wrongfully prevent and prohibit him from doing what he has contracted to do, ·and what the statute contemplates he will be allowed under the contract to do. If the laborer will not work and create, and gives the employer just cause for his dismissal, he loses his lien from the date of his failure; but if he wants to work and will work, and create for the employer, but the employer refuses to let him, and wrongfully discharges him, the employer is the loser, and not the employee. In such case the employer loses what the laborer would create if he were not wrongfully prevented from so doing; but the employee does not lose any benefit given him by the statute, and still has his lien for his wages for the entire contractual period, reduced by his earnings, if any, after discharge. In every instance where this court had given a construction to this statute, it has been a liberal construction in favor of the lien, securing to the laborer his wages under a contract of employment of this kind, where the statute creates the lien. Thus, in the case of *Buck* v. *Payne,* 52 Miss. 277, the court held that the policy of the statute was to make sure to the laborer his wages.

In the case of *Lumbley* v. *Thomas,* 65 Miss. 97, 5 South. 823, the court held that the statute applied, so as to give a lien on the agricultural products to a laborer, where it was shown that the work of the laborer was not confined to working in the crop, but also consisted in chopping wood and working in a blacksmith shop. The *Lumbley case, supra,* destroys the contention of appellant that the lien given by the statute attaches to only such products as the laborer helps by his labor to create. In working in the blacksmith shop or chopping wood, the laborer was certainly not helping to create any cotton or corn, or other agricultural products. The Lumbley case shows how liberal this court has always been in the construction of this statute, so as to make it carry out its purpose and secure the laborer in his wages. Again in

the case of *Irwin* v. *Miller*, 72 Miss. 174, 16 South. 678, the court says the primary and principal purpose of the statute is to afford security to the agricultural laborers. In view of the decisions above quoted, and the manifest purpose of the statute under review, we hold, without the slightest hesitation, that the statute applies to the case made by the facts now before the court. At the date of the institution of this suit, it appears that Langford owed Leggett his wages under the contract, amounting to the sum of one hundred and eighty-five dollars for which he had a lien. The rights of the parties are to be determined by the conditions which prevailed at the time of the institution of the suit.

*Affirmed.*

SMITH, J. (dissenting).

I think the lien conferred by the statute is for labor done, and not for labor which the laborer would have done, had he been permitted to do so. The case of *Lumbley* v. *Thomas*, 65 Miss. 97, 5 South. 823, is not in point. Thomas was employed to work on a plantation as a "wages hand and general laborer." The labor done by him consisted of "plowing, hoeing, chopping wood, hauling cotton, working in blacksmith shop, running the engine, and ginning the cotton." It will be observed that all of the work done by Thomas was necessary to be done in order that a crop might be made, and all of it, except possibly the chopping of wood and work in blacksmith shop, related directly to the making and preparing for market of the crop upon which the lien was claimed. And, moreover, it would have been practically impossible in that case for the court to have separated the amount due Thomas for chopping wood and for work in the blacksmith shop from the amount due him for plowing, hoeing, hauling cotton, running the engine, and ginning the cotton, for which he was undoubtedly entitled to a lien.