UNITED STATES of America, Plaintiff,

v.

MINSTER FARMERS COOPERATIVE EXCHANGE, INC., Defendant.

No. C 75–127.

United States District Court, N. D. Ohio, W. D.

April 5, 1977.

Patrick Foley, Asst. U. S. Atty., Toledo, Ohio, for plaintiff.

James E. Weger, Connaughton & Weger, Wapakoneta, Ohio, for defendant.

## OPINION and ORDER

WALINSKI, District Judge.

This cause came to be heard on the parties' cross-motions for summary judgment, filed pursuant to Rule 56, Federal Rules of Civil Procedure. A stipulation of fact has been filed by the parties, all issues before the Court have been thoroughly briefed, and the matter is now before the Court for a determination.

### PRELIMINARY STATEMENT

Plaintiff, the United States of America, brings this action under 28 U.S.C. § 1345, to recover the value of certain crops alleged to have been unlawfully converted by the defendant, Minster Farmers Cooperative Exchange, Inc. [hereafter MFCE]. Specifically, the Government claims to have held a perfected security interest in crops grown in 1969 and 1970 on a parcel of land farmed by Robert G. Vondenhuevel and Mary K. Vondenhuevel by virtue of several security agreements entered into between the Farmers Home Administration and the Vondenhuevels, and allegedly perfected through the filing of a financing statement and a continuation statement with the proper state officials. The crops in question were apparently delivered to the defendant by the Vondenhuevels in partial payment of credit extended by the defendant. The Government contends that the defendant's receipt of said crops amounted to an unlawful conversion for which it is liable to the Government in this action. The defendant, on the other hand, contends that the Government failed to perfect a valid security interest in the crops in question, and further argues, in the alternative, that

MFCE itself held a perfected security interest in the crops and was entitled to priority. Having reviewed the stipulations between the parties, as well as the affidavits and documents submitted by counsel, the Court makes the following findings of fact.

## FINDINGS OF FACT

1) Plaintiff, acting through the Farmers Home Administration, made five separate loans, evidenced by promissory notes, to Robert G. Vondenhuevel and Mary K. Vondenhuevel during the periods from April 26, 1965, to and including December 5, 1968, as follows:

| | |
|---|---|
| April 26, 1965 | $9940.00 |
| March 8, 1966 | 1300.00 |
| October 14, 1966 | 1860.00 |
| May 1, 1967 | 1600.00 |
| December 5, 1968 | 2360.00 |

The last payment on the note executed April 26, 1965, was due January 1, 1971, and the last payment on the note executed December 5, 1968, was due December 1, 1973. At the time this suit was filed, there remained due and owing on said promissory notes an unpaid principal balance of $10,558.17, plus interest.

2) On April 26, 1965, March 15, 1967, May 16, 1967, September 24, 1968, April 5, 1969, and December 19, 1969, security agreements were executed between the plaintiff as the secured party, and Robert G. Vondenhuevel and Mary K. Vondenhuevel as debtors, to secure payment of the indebtedness evidence by the promissory notes indicated above. Each of said security agreements granted to the plaintiff herein a security interest in various collateral, including

All crops, annual and perennial, and other plant products now planted, growing or grown, *or which are hereafter planted or otherwise become growing crops or other plant products within one year after the date of this Agreement on the following described real estate*: * * * 140A Sec. 20 Jackson Twp. Auglaize, Ohio * * *. (*Emphasis added.*)

3) On May 5, 1965, a Financing Statement listing the United States of America as the secured party and Robert G. Vonden-

huevel and Mary K. Vondenhuevel as debtors was filed with the Auglaize County, Ohio Recorder covering crops "growing on or to be grown on * * * the premises described as follows * * * 140 Sec. 20 Jackson Twp. Auglaize, * * *."

4) On May 4, 1970, plaintiff filed a Continuation Statement with the Auglaize County, Ohio Recorder. Said statement expressly refers to the Financing Statement of May 5, 1965.

5) On April 1, 1969, Robert G. Vondenhuevel was indebted to defendant in the amount of One Thousand Two Hundred Forty-six Dollars and Fifty-seven Cents ($1,246.57), and beginning in May, 1969, defendant furnished to Robert G. Vondenhuevel, on credit, seed, fertilizer and other materials to meet the requirements of planting the 1969 crops. On June 18, 1969, as security therefor, Mr. and Mrs. Robert G. Vondenhuevel executed a security agreement with defendant to secure the payment of Two Thousand Two Hundred Dollars ($2,200.00). The security agreement pledged 42 acres of soybeans and 35 acres of corn planted or to be planted on land farmed as a tenant by Mr. Vondenhuevel in Jackson Township, Auglaize County, Ohio. A financing statement was filed in the Auglaize County, Ohio Recorder's office on June 19, 1969. The soybeans and corn sales from that farm were applied to Mr. Vondenhuevel's indebtedness to defendant.

6) Beginning in April, 1970, defendant furnished to Robert G. Vondenhuevel, on credit, seed, fertilizer and other materials to meet the requirements of planting the 1970 crops and as security therefor Mr. and Mrs. Robert G. Vondenhuevel executed a security agreement with defendant on May 16, 1970, to secure the payment of Two Thousand Five Hundred Dollars ($2,500.00). The security agreement pledged 60 acres of soybeans and 60 acres of corn planted or to be planted on land farmed as a tenant by Mr. Vondenhuevel in Jackson Township, Auglaize County, Ohio. A financing statement was filed in the Auglaize County, Ohio Recorder's office on May 22, 1970. The soybean and corn sales from that farm

were applied to Mr. Vondenhuevel's indebtedness to defendant.

7) Mr. Vondenhuevel's total grain sales to defendant from 1969 through April 1, 1971, amounted to Five Thousand Forty Dollars and Four Cents ($5,040.04).

## DISCUSSION

This dispute is controlled by the provisions of Chapter 1309 of the Ohio Revised Code dealing with secured transactions. In essence, the question posed is whether the plaintiff held a perfected security interest in the contested collateral, and if so, whether the plaintiff's perfected security interest is entitled to priority over the perfected security interest of the defendant.

### I.

By each of the security agreements executed between the plaintiff and the Vondenhuevels, the Government was granted an interest in after-acquired collateral, i. e., crops to be planted, or become growing, on designated land at a time not later than one year from the execution of the security agreement. Such an agreement is consistent with the provisions of Ohio Revised Code § 1309.15(D)(1) [UCC § 9–204(4)(a)]. Accordingly, by virtue of the security agreements dated May 16, 1967, September 24, 1968, April 5, 1969, and December 19, 1969, the plaintiff can properly claim a security interest in all crops which were planted or became growing by December 19, 1970. Under the provisions of Ohio Revised Code § 1309.15(A) and (B)(1) [UCC § 9–204(1) and (2)(a)], the plaintiff's security interest in said collateral "attached" at the time the crops were planted.

By virtue of the security agreement entered into between the defendant and the Vondenhuevels, the defendant likewise acquired a valid security interest in certain after-acquired property, i. e., crops grown or growing, or to be planted or become growing within one year of execution of the agreements. As a result ᶜof the agreement dated June, 1969, the defendant acquired a security interest in crops planted not later than June, 1970, and as a result of the agreement dated May, 1970, the defendant acquired a security interest in crops planted not later than May, 1971. As did the plaintiff's, the defendant's security interest in the Vondenhuevels' crops attached at the time the crops were planted. Ohio Revised Code § 1309.15(A), (B)(1) [UCC § 9–204(1), (2)(a)].

■ Because both parties, by virtue of their respective security agreements, held property interests in the same after-acquired crops, the security interests of both parties "attached" at the precise same time—when the crops were planted.

### II.

Under the provisions of Ohio Revised Code § 1309.22(A) [UCC § 9–303(1)], a security interest is perfected when all applicable steps required for perfection have been taken. Section 1309.22(A) [UCC § 9–303(1)], further provides that if such steps are taken before the security interest attaches, the security interest is perfected at the time it attaches.

In the instant case both parties completed the applicable steps required for perfection by filing financing statements with the Auglaize County Recorder, as required by Ohio Revised Code §§ 1309.21 [UCC § 9–302], and 1309.38 et seq. [UCC § 9–401 et seq.]. The defendant contends, however, that the plaintiff's financing statement, which was filed in 1965, and continued in 1970, was ineffective to perfect a security interest in the after-acquired crops grown in 1969 and 1970 for the reason that the crops "became such" more than one year after the financing statement was filed. However, this argument demonstrates a fundamental misunderstanding of the applicable code sections.

■ Ohio Revised Code § 1309.15(D) [UCC § 9–204(4)], upon which the defendant relies, provides, inter alia :

(D) No security interest attaches under an after-acquired property clause:

(1) to crops which become such more than one year after the security agree-

ment is executed except that a security interest in crops which is given in conjunction with a lease or a land purchase or improvement transaction evidenced by a contract, mortgage, or deed of trust may if so agreed attach to crops to be grown on the land concerned during the period of such real estate transaction.

This section cannot fairly be read to require the filing of a new financing statement for every crop year. By its plain language the section requires only the execution of a new security agreement, which the plaintiff clearly did. Ohio Revised Code § 1309.40(B) [UCC § 9–403(2)], expressly states that any filed financing statement which does not bear a maturity date is effective for a period of five years from the date of filing. Ohio Revised Code § 1309.40(C) [UCC § 9–403(3)], further provides that by properly filing a continuation statement within six (6) months prior to the expiration of the five-year period the effectiveness of the original financing statement may be continued five years. Therefore, the Court finds that the plaintiff did hold a perfected security interest in the Vondenhuevels' 1969 and 1970 crops, and further finds that the security interest was perfected at the time of attachment, to wit, when the crops were planted. *See* Ohio Revised Code §§ 1309.-15(A), (B)(1) [UCC § 9–204(1), (2)(a)], and 1309.22(A) [UCC § 9–303(1)].

### III.

The Court having determined that the plaintiff did hold a valid perfected security interest in the contested crops, and it clearly appearing from the record that the defendant likewise held a perfected security interest in the same crops, it remains to determine which party's interest is entitled to priority.

Defendant argues that its own perfected security interest is entitled to priority over the interest of the plaintiff because it was executed as security for new value given to

---

1. For the purpose of resolving this issue the Court will assume from the timing of the defendant's extension of credit to the Vondenhuevels that the seed and materials supplied by

---

enable the Vondenhuevels to produce the contested crops, not more than three months before the crops became growing by planting or otherwise.[1] Defendant relies on Ohio Revised Code § 1309.31(B) [UCC § 9–312(2)], which provides that such a security interest takes priority over an earlier perfected security interest

> to the extent that such earlier interest secures obligations *due more than six months* before the crops became growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest.

Defendant argues that because the last promissory note between the plaintiff and the Vondenhuevels was executed on December 5, 1968, the plaintiff's security interest secured obligations "due" more than six months before either the 1969 or the 1970 crops became growing.

The Court has found no case law construing this precise language of § 1309.-31(B) [UCC § 9–312(2)]. However, Professors White and Summers state that subsection (B) "entitles one to priority only over obligations more than six months *overdue* at the time the crops in question become growing crops." White & Summers, *Uniform Commercial Code* § 25.6 at 923 (1972). The Court adopts this construction and concludes that because there were installments due the Government from the Vondenhuevels within six months of the planting of the 1969 and 1970 crops, and continuing through 1973, the defendant is not entitled to priority under § 1309.31(B) [UCC § 9–312(2)].

This case is, therefore, controlled by Ohio Revised Code § 1309.31(E) [UCC § 9–312(5)], which sets forth the general rules by which priority among conflicting security interests in the same collateral is to be determined. Specifically, § 1309.31(E)(1) [UCC § 9–312(5)(a)], in relevant part provides that:

> the defendant were in fact used to grow the contested crops, although no direct evidence was offered on this point.

* * * priority between conflicting security interests in the same collateral shall be determined as follows:

(1) *in the order of filing if both are perfected by filing, regardless of which security interest attached first under division (A) of section 1309.15 of the Revised Code and whether it attached before or after filing.*

■ As the security interests of both parties were perfected by filing, and because the financing statement of the plaintiff was clearly filed prior to that of the defendant, it is the finding of the Court that the security interest of the plaintiff was entitled to priority over the security interest of the defendant.

## IV.

■ It is now well established that a merchant who receives property from his principal and sells it, and either pays the proceeds to his principal or applies the proceeds to the principal's account, is liable for conversion to the holder of a superior perfected security interest in the property, even though the merchant acts without knowledge of the defect in the principal's title. *See generally United States v. McCleskey Mills, Inc.,* 409 F.2d 1216 (5th Cir. 1969); *Cassidy Co. v. United States,* 387 F.2d 875 (10th Cir. 1967); *United States v. Carson,* 372 F.2d 429 (6th Cir. 1962). The measure of the merchant's liability is the fair market value at the time the conversion took place.

Therefore, for the reasons stated above, the Court will make the following conclusions of law.

## CONCLUSIONS OF LAW

1) Jurisdiction over this action is proper under 28 U.S.C. § 1345.

2) There are no disputed questions of fact.

3) The plaintiff is entitled to judgment as a matter of law.

It is therefore ORDERED that defendant's motion for summary judgment should be and hereby is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment should be and hereby is granted.

IT IS FURTHER ORDERED that the plaintiff, United States of America, recover from the defendant, Minster Farmers Cooperative Exchange, Inc., the sum of Five Thousand Forty Dollars and Four Cents ($5,040.04), with interest at the rate of six percent (6%) per annum from April 1, 1971, and its costs of action.