In re Charles E. SMITH, d/b/a Charles E. Smith Farms.

Bankruptcy No. TES83–40033.

United States Bankruptcy Court, N.D. Mississippi.

May 12, 1984.

Fincher Bobo, Neblett, Bobo, Chapman & Heaton, Shelby, Miss., for Charles E. Smith.

U.S. Atty. Glen Davidson and Asst. U.S. Atty. Patricia D. Rogers, Oxford, Miss., for Farmers Home Admin.

## ORDER

DAVID W. HOUSTON, III, Bankruptcy Judge.

CAME ON to be heard and was heard the motion to pay over funds filed by the United States Attorney, Northern District of Mississippi, on behalf of Farmers Home Administration; response filed by the debtor, Charles E. Smith, d/b/a Charles E. Smith Farms; response filed by creditor, Leon Warrington, d/b/a Warrington Flying Service; all parties being represented in Open Court by their respective attorneys of record; on proof before the Court; and the Court having heard and considered same finds and adjudicates as follows, to-wit:

### I.

The parties stipulated that Exhibits "A" through "N" as attached to the motion filed by Farmers Home Administration, as well as, Exhibits "A" and "B" as attached to the response of Leon Warrington, d/b/a Warrington Flying Service, could be received as evidence without objection. The parties further stipulated to the following facts, to-wit:

a. That the total indebtedness owed to Farmers Home Administration by the debtor is as follows: principal—$559,263.97; interest—$150,146.89; daily interest accrual—$195.0817 per day.

b. The 1982 crop production loan indebtedness owed to Farmers Home Administration by the debtor, which is included in the total indebtedness appearing in subparagraph a. immediately preceding, is as follows: principal—$187,940.00; interest—$55,869.93; daily interest accrual—$82.3847 per day.

It was further stipulated that no payments had been made by the debtor on this 1982 crop production loan.

c. The amount of the indebtedness owed to Leon Warrington, d/b/a Warrington Flying Service, by the debtor, is as follows: 1981 crop—$7,740.45; 1982 crop—$11,922.00.

### II.

Pursuant to the Order of this Court, dated February 23, 1984, the Trustee of this estate paid into the registry of the Court the sum of $103,112.65, less an attorney's fee awarded to the said Trustee in the sum of $1,071.20, which represented proceeds received from the harvest of the debtor's 1982 crop. The purpose of this proceeding is to determine the priority of liens as to the affected creditors of the debtor, so that an appropriate distribution of the crop proceeds can be authorized.

### III.

As a result of the introduction into evidence of Exhibit "P", tendered by Farmers Home Administration, being an assignment of the proceeds from Upland Cotton, Rice, Wheat and Feed Grain Programs, by the debtor, under date of March 30, 1982, the debtor, through his attorney, announced that he disclaimed any interest in the crop proceeds paid into the registry of the Court. Consequently, the claims of the debtor are hereby dismissed.

### IV.

That inasmuch as the 1981 indebtedness owed to Leon Warrington, d/b/a Warrington Flying Service, by the debtor in the sum of $7,740.45, is not applicable to the 1982 crop proceeds, this claim will not be considered in the distribution of said proceeds, since by law, it is clearly subordinate to the security interest of Farmers Home Administration. Therefore, the only remaining issue is the consideration of whether the 1982 indebtedness owed to Leon Warrington, d/b/a Warrington Flying Service, in the sum of $11,922.00 enjoys priority over the perfected security interest in the crop proceeds held by Farmers Home

Administration resulting from the 1982 crop production loan.

## V.

Leon Warrington, d/b/a Warrington Flying Service, hereinafter referred to simply as Warrington, asserts its lien to the extent of $11,922.00, by virtue of § 85–7–1, Mississippi Code of 1972, as amended, which provides as follows:

"Every employer shall have a lien on the share or interest of his employee in any crop made under such employment, for all advances of money, and for the fair market value of other things advanced by him, or any one at his request, for supplies for himself, his family and business during the existence of such employment, which lien the employer may offset, recoup, or otherwise assert and maintain. *Every employee, laborer, cropper, part owner, overseer or manager, or other person who may aid by his labor to make, gather, or prepare for sale or market any crop, shall have a lien on the interest of the person who contracts with him for such labor for his wages, share or interest in such crop, whatever may be the kind of wages or the nature of the interest,* which lien such employee, laborer, cropper, part owner, overseer or manager, or other person may offset, recoup or otherwise assert and maintain. *Any such lien shall be paramount to all liens and encumbrances or rights of any kind created by or against the person so contracting for such assistance,* except the lien of the *lessor of the land* on which the crop is made, *for rent* and *supplies* furnished, as provided in the chapter on "Landlord and Tenant," appearing as Chapter 7 of Title 89, Mississippi Code of 1972." (Emphasis added)

In support of his position, Warrington cites to the Court the cases of *Quiver Gin Co. v. Looney,* 144 Miss. 709, 11 So. 107; *Irwin v. Miller,* 72 Miss. 174, 16 So. 678, and *Duncan v. Jayne,* 76 Miss. 133, 23 So. 392. The language in these cases supports the contention that a creditor such as War-

rington, who has furnished services necessary to the harvesting of the crops as opposed to supplies, is afforded a statutory lien to the extent of the indebtedness. The question of whether this statutory lien has priority over a previously perfected security interest must, however, be considered. To appropriately place this discussion in perspective, the interaction between three statutes must be considered, i.e., § 75–9–104, § 75–9–310, and § 85–7–1, Mississippi Code of 1972, as amended. § 75–9–104(c) states, inter alia, that this Chapter (UCC-Secured Transactions, etc.) does not apply to a lien given by statute or other rule of law for services or materials except as provided in § 75–9–310, which applies to the priority of such liens.

§ 75–9–310 states as follows:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule or law for such materials or services takes priority over a perfected security interest *unless the lien is statutory and the statute expressly provides otherwise."* (Emphasis added)

In construing the priority of a mechanic's lien (§ 85–7–101), the Mississippi Supreme Court has taken the position that possession of the collateral is critical for such a lien to be superior to a previously perfected security interest. See *Thorp Commercial Corporation v. Mississippi Road Supply Co.,* 348 So.2d 1016 (1977). However, there is a major distinction between the mechanic's lien statute and § 85–7–1 which is applicable to the case now before this Court. As denoted hereinabove, the latter section contains the provision that any such lien, e.g., that of Warrington, shall be paramount to all liens and encumbrances or rights of any kind created by or against the person so contracting for such assistance, except the lien of the lessor of the land on which the crop is made, for rent and supplies furnished. Farmers Home Administration is not a landlord; and this Court is of the opinion that the language appearing

in these several statutes clearly indicates that a lender holding a perfected security interest is not to be treated as a landlord. The last phrase in § 75–9–310 further confirms this premise with the statement that the statute creating the statutory lien can provide an exception to priority. In Mississippi, quite the contrary is true; § 85–7–1 provides only one specific exception in priority which is the landlord. Confronted with the unambiguous language of this statute, this Court is unwilling to engraft a second exception by adding the crop production lender, or by cloaking the crop production lender with the priority rights of a landlord.

This case is very similar to the construction money lender who advances money to the general contractor who, in turn, fails to pay the materialmen, laborers, or suppliers. The testimony presented by Farmers Home Administration, indicated that this crop production loan was calculated following the presentation of a crop expense budget prepared by the debtor. Ironically, if the Court recalls the testimony correctly, there was a line item in this budget for crop spraying by airplane application. Farmers Home Administration maintained no supervised bank account to insure that the laborers, etc., were being paid. The construction lender is protected if it uses reasonable means, i.e., contractor's affidavits, etc., to insure that the loan proceeds are being properly expended. In this case, the proof is silent as to what Farmers Home Administration did, if anything, to comply with this test.

Therefore, it is the opinion and order of this Court that the crop proceeds paid into the registry previously by the Trustee of this estate be distributed as follows, to-wit:

a. First to Leon Warrington, d/b/a Warrington Flying Service, and his attorney Honorable Fincher G. Bobo, the sum of $11,922.00.

b. The balance of said funds paid into the registry of this Court, less accrued interest following deposit, discussed hereinbelow, shall be paid over to Farmers Home Administration or as designated by the Office of the United States Attorney, Northern District of Mississippi.

c. Any accrued interest on said funds since deposit into the registry of this Court shall be prorated between the parties hereto as their respective interests appear.