In re Bruce GLINZ and Cecelia
Glinz, Debtors.

NORWEST BANK–JAMESTOWN, for-
merly known as First National
Bank of Jamestown, Plaintiff,

v.

OSTLUND CHEMICAL COMPANY; K.L.
Corporations; Spring Valley Simmen-
tal, Inc.; Farmers Home Administra-
tion, an agency of the United States of
America; Farmers Union Oil Company
of Drayton, North Dakota; Marvin
Johnson; Florimond Desprez; Gary
Cameron, Trustee of Bruce Glinz and
Cecelia Glinz; Arvel Glinz and Marjo-
rie Glinz, Debtors in Chapter 11 pro-
ceedings No. 83–05121, Defendants.

Bankruptcy No. 83–05004.
Adv. No. 83–7399.

United States Bankruptcy Court,
D. North Dakota.

Nov. 20, 1984.

David T. DeMars, Fargo, N.D., for plaintiff Norwest Bank.

Lawrence DuBois, Cavalier, N.D., for defendants Johnson and Desprez.

First Asst. U.S. Atty. Gary Annear, Fargo, N.D., for defendant FHA.

Dwight F. Kalash, Grand Forks, N.D., for defendant Farmers Union.

William A. Schlossman, Jr., Fargo, N.D., Steven C. Turner, Omaha, Neb., for defendant Ostlund Chemical.

Gary Cameron, Trustee, Moorhead, Minn., for defendant Gary Cameron.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Plaintiff, Norwest Bank-Jamestown, commenced the present adversary proceeding by Complaint filed with the Court on December 29, 1983. Norwest Bank seeks through its Complaint a turnover of funds now held by the Trustee and generally requests that the Court determine that its interest in those proceeds are superior to those claims of the various Defendants. The Defendants, K.L. Corporations and Spring Valley Simmental, Inc., did not file an answer to the Bank's Complaint in this action. Trial in this matter was held on September 10, 1984. The Defendants, Spring Valley Simmental, Inc., K.L. Corporations, and Arvel and Marjorie Glinz, failed to appear and assert any interest in the proceeding. Thereafter, the Court entered on October 18, 1984, an Order dismissing those Defendants from this action, precluding them from asserting any claim to the subject matter of this proceeding. The Plaintiff and remaining Defendants submitted at trial a Stipulation of Uncontested Facts, various exhibits, and an executed Waiver of Foundation with respect to the exhibits presented to the Court at trial. All parties claim a prior interest in and to the funds held by the Trustee as against all other parties to this action. Based upon the record submitted to the Court, the relevant facts are found to be as follows.

## FINDINGS OF FACT

The Debtors, Bruce and Cecelia Glinz, filed for relief under Chapter 11 of the Bankruptcy Code on January 28, 1983. The Debtors' Chapter 11 proceeding was converted to a case under Chapter 7 of the Bankruptcy Code on May 27, 1983. Gary Cameron was appointed Trustee in the Chapter 7 proceeding on June 1, 1983. Pursuant to a stipulation of parties who asserted a secured interest in the Debtors' crops, the Trustee sold stored grain of the Debtors for the gross sum of $113,934.83. In his Affidavit filed in connection with this

matter, the Trustee states that he sold 7,054 bushels of barley for $12,697.30. All the barley which the Trustee sold had been stored in Kittson County, Minnesota. The Trustee also states in his Affidavit that he sold 16,667 bushels of wheat which was stored in Kittson County for the sum of $47,500.95. The accounting which the Trustee supplied in connection with this matter indicates that a total of 35,646 bushels of wheat were sold. The difference of 18,979 bushels of wheat was wheat which the Trustee found stored in Pembina County, North Dakota. The Trustee obtained $53,736.58 for the grain stored in Pembina County.

The grain sold by the Trustee was grain produced by the Debtors during the 1982 crop season. Bruce Glinz estimated at his deposition that in 1982 he put in 3,200 acres of wheat and 400 acres of barley in Pembina County. In his summary of chemical applications, Bruce Glinz enumerated by land owner his crop acreage, as follows:

| Land Owner | Crop Acreage |
|---|---|
| **Wheat** | |
| David Peil | 80 acres |
| Marvin Johnson | 680 acres |
| Allen Duncklee | 981 acres |
| Bruce Glinz | 1,600 acres |
| Bruce Glinz | 600 acres (Kittson County) |
| TOTAL | 3,941 acres |
| **Barley** | |
| Bruce Glinz | 400 acres |

| Land Owner | Crop Acreage |
|---|---|
| **Soybeans** | |
| David Peil | 80 acres |
| Verne Billings | 150 acres |
| Grace Bellamy | 318 acres |
| E.K. Olafson | 260 acres |
| Bruce Glinz | 400 acres |
| Bruce Glinz | 160 acres |
| Bruce Glinz | 80 acres |
| **Sunflowers** | |
| | 80 acres |

The summary of chemical applications provided by Bruce Glinz does not specify upon which tracts of a specific landowner's real estate a crop was grown. The creditors in this proceeding claimed interests in crops grown on various real estate parcels as enumerated in Appendix A. Bruce Glinz testified that crops were seeded on the Marvin Johnson property in June of 1982. The harvest of wheat in Pembina County began the fourth week of September and was concluded by the first part of November, 1982. Glinz recollected that all of the barley harvested in North Dakota was stored in Minnesota and that there was stored in Kittson County, Minnesota, one and one-half bins of hard wheat which had been grown in North Dakota. The Court takes judicial notice of the fact that an average sized grain storage bin on a farm in this area holds 5,000 bushels. The Court finds that the source of the proceeds held by the Trustee are, as follows:

| Dollar | Bushels/Grain | Location Grown | Location Stored |
|---|---|---|---|
| $12,697.30 | 7,054/barley | Pembina County, ND | Kittson County, MN |
| $26,138.77 | 9,167/wheat | Kittson County, MN | Kittson County, MN |
| $21,362.18 | 7,500/wheat | Pembina County, ND | Kittson County, MN |
| $53,736.58 | 18,979/wheat | Pembina County, ND | Pembina County, ND |

## NORWEST BANK–JAMESTOWN

On or about May 14, 1982, the Debtors executed and delivered to the Norwest Bank-Jamestown a promissory note in the principal amount of $250,000.00. As of September 10, 1984, the principal balance due on the note was $250,000.00 and accrued interest amounted to $110,095.88 for a total of $360,095.88. Interest accrues at the rate of $130.1370 per day.

On or about May 14, 1982, the Debtors executed and delivered to the Bank a promissory note in the principal amount of $340,000.00. As of September 10, 1984, the principal balance due on that note was $110,530.65 and accrued interest in the amount of $30,928.89 for a total of $141,-459.54. Interest accrued on that note at the rate of $49.9659 per day.

On or about March 19, 1982, the Debtors executed and delivered to the Bank a promissory note in the principal amount of $434,224.49. As of September 10, 1984, the principal balance due on the note was $194,886.75 and accrued interest was $73,870.41 for a total sum due of $268,757.16. Interest accrues on that note at the rate of $85.4298 per day.

The two notes executed on May 14, 1982, were for new advances given by the Bank to the Debtors for their operations during the 1982 crop year.

On or about May 14, 1982, the Debtors executed and delivered to the Bank a security agreement conveying an interest in growing crops and the proceeds thereof.

The Bank filed a financing statement with the Pembina County Register of Deeds on May 18, 1982. The Bank also filed a financing statement with the Stutsman County Register of Deeds on May 17, 1982. Finally, a financing statement was filed by the Bank with the County Recorder for Kittson County, Minnesota, on May 18, 1982. All three financing statements indicated that the Bank was claiming an interest in crops grown by Bruce and Cecelia Glinz on enumerated parcels of real estate.

Norwest Bank obtained a subordination agreement executed April 16, 1982, wherein the Government subordinated its interest in the Debtors' 1982 crops which the Farmers Home Administration claimed through financing statements filed May 18, 1981.

## FARMERS HOME ADMINISTRATION

On or about May 15, 1981, Bruce and Cecelia Glinz executed and delivered to the Farmers Home Administration a security agreement conveying an interest in growing crops, crops to be grown, and the proceeds of those crops. The Debtors delivered to the Farmers Home Administration an additional security agreement dated December 4, 1981, conveying a similar interest in crops.

The Farmers Home Administration filed an executed financing statement in Pembina County, North Dakota, on May 18, 1981. An executed financing statement was also filed on May 18, 1981, by the Farmers Home Administration with the County Recorder for Kittson County, Minnesota.

The claim of the Farmers Home Administration in this bankruptcy proceeding is in the principal amount of $663,345.48 with accrued interest as of September 10, 1984, amounting to $43,561.37.

## MARVIN JOHNSON AND FLORIMOND DESPREZ

Desprez is the owner of certain real estate in Pembina County, North Dakota. Marvin Johnson is attorney-in-fact for Florimond Desprez. A lease agreement dated November 20, 1980, was negotiated between Johnson and Bruce Glinz covering the Northwest Quarter, Southeast Quarter, and Southwest Quarter, Section 2–161–52 and the Southeast Quarter and the Northeast Quarter, Section 3–161–52, Pembina County, North Dakota. The lease agreement was executed by Bruce Glinz on November 28, 1980. The lease indicates that the real estate covered by the lease contains 693 tillable acres. Bruce Glinz estimated that he actually tilled 680 acres of the Marvin Johnson property. By its terms, the lease was to remain in effect for three (3) years ending at the conclusion of the 1983 crop year. Under the lease, fifty percent of the rental was due on or before April 1 of each year and the remaining rent was due on or before November 20. The lease recites that "title to all crops grown shall remain with the Owner until all conditions of this lease have been complied with." The lease was recorded on December 1, 1980, in the Register of Deeds Office, Pembina County, North Dakota. On September 8, 1982, Bruce Glinz and Marvin Johnson executed an Addendum to the farm lease to provide for an abatement of the rent due in the event of flooding of the real estate covered by the lease.

Johnson, as attorney-in-fact for Florimond Desprez, obtained from Bruce Glinz a promissory note dated May 17, 1982, in the principal amount of $26,125.51. The note

represented the rent due but not paid in the Spring of 1982. Bruce Glinz also delivered to Johnson a security agreement dated May 25, 1982, conveying to Desprez an interest in crops to be grown on the leased real estate. An executed financing statement disclosing the interest of Desprez in the crops of the Debtor was filed on May 26, 1982, with the Register of Deeds of Pembina County, North Dakota.

Glinz ultimately failed to make either a payment on the promissory note or on the next due under the lease in the Fall of 1982. Glinz remains indebted to Desprez on the note in the principal amount of $26,125.51 with accrued interest as of August 29, 1984, amounting to $9,861.41. Glinz is indebted to Desprez under the farm lease in the principal amount of $27,373.50 with accrued interest as of August 29, 1984, amounting to $6,206.74.

### FARMERS UNION OIL COMPANY OF DRAYTON, NORTH DAKOTA

Farmers Union sold and delivered to the Debtors chemicals and fertilizers, as follows:

May 1, 1982 to June 3, 1982

Farmers Union Co-op Oil Co. of Drayton, ND

| Quantity | Description | Total Value |
|---|---|---|
| 45,315 lbs. | 90–40–20+20 zinc (dry fertilizer) | $54,349.30 |

| Quantity | Description | Total Value |
|---|---|---|
| 261,660 lbs. | 90–55–0–92–52–0 (dry fertilizer) | 38,220.00 |
| 49,280 lbs. | 92–82–0 (dry fertilizer) | 6,328.00 |
| 316,000 lbs. | 92–0–0 (nitrogen) | 37,051.00 |
| 316,000 lbs. | 18–46–0 (bulk) | 3,840.00 |
| 482,400 lbs. | 92–0–0 (nitrogen) | 56,585.52 |
| 31.5 tons | 18–46–0 (dry fertilizer) | 7,560.00 |
| 33 tons | 28–0–0 (liquid fertilizer) | 4,290.00 |

The Debtors are indebted to the Farmers Union in the principal amount of $203,836.45 with accrued interest as of August 29, 1984, in the amount of $79,496.21.

Farmers Union filed various lien statements with the Register of Deeds of Pembina County on July 16, 1982.

Some portion of the chemicals and/or fertilizer sold and delivered by Farmers Union were used and applied on the land which produced the barley crop sold by the Trustee.

Some portion of the chemicals and/or fertilizer sold and delivered by Farmers Union were used and applied on the land which produced the wheat crop sold by the Trustee.

### OSTLUND CHEMICAL COMPANY

Ostlund Chemical Company sold and delivered to the Debtors chemicals, as follows:

April 30th, 1982 to July 5th, 1982

| QUANTITY | DESCRIPTION | UNIT PRICE/GAL. | TOTAL VALUE |
|---|---|---|---|
| 690 gallon | Treflan | $33.00 | $22,770.00 |
| 700 gallon | Fargo | 27.75 | 20,257.50 |
| 480 gallon | Maneb Lindane | 4.85 | 2,328.00 |
| 1145 gallon | Brominal Plus | 40.60 | 46,487.00 |
| 180 gallon | Brominal Plus | 41.50 | 7,470.00 |
| 420 gallon | Brominal Plus | 40.40 | 16,968.00 |
| 400 gallon | Eptam 7E | 24.23 | 9,692.00 |
| 870 gallon | EDTA 5% Copper | 5.80 | 5,046.00 |
| 1180 gallon | Hoelon | 44.60 | 52,628.00 |
| 250 gallon | Brominal | 35.95 | 8,987.50 |
| 150 gallon | Roundup | 68.65 | 10,297.50 |
| 24 gallon | Activator W | 9.80 | 235.20 |
| 300 gallon | Basagran | 73.00 | 21,900.00 |
| 150 gallon | Herbimax | 5.50 | 825.00 |

July 6th, 1982 to August 20th, 1982

| | | | |
|---|---|---|---|
| 425 gallon | Hoelon | 44.60 | 18,955.00 |
| 285 gallon | Brominal Plus | 41.70 | 11,884.50 |

| QUANTITY | DESCRIPTION | UNIT PRICE/GAL. | TOTAL VALUE |
| --- | --- | --- | --- |
| 60 gallon | Brominal Plus | 41.50 | 2,490.00 |
| 40 gallon | Brominal | 47.00 | 1,480.00 |
| 770 gallon | Methyl Parathion | 11.10 | 8,547.00 |
| 950 lbs. | Dithane M–22 Special | 1.85/lb. | 27,657.50 |
| 12000 lbs. | Dithane M–22 Special | 1.75/lb. | 21,000.00 |
| 92 gallon | Bond | 21.00 | 1,932.00 |
| 52 gallon | Triton CS–7 | 14.50 | 754.00 |
| 3050 lbs. | Mansate D | 1.75/lb. | 5,337.50 |
| 1000 lbs. | Malathion 4% | .49/lb. | 490.00 |
| 500 gallon | CC 9% Zinc | 6.00 | 3,000.00 |
| 50 gallon | Basagran | 73.00 | 3,650.00 |

The Debtors are indebted to Ostlund Chemical in the amount of $301,501.20 with accrued interest as of August 29, 1984, in the amount of $103,931.17.

On or about July 9, 1982, and September 10, 1982, Ostlund Chemical filed lien statements with the Register of Deeds of Pembina County.

Some portion of the chemicals sold and delivered by Ostlund Chemical were used and applied on the land which produced the barley sold by the Trustee.

Some portion of the chemicals sold and delivered by Ostlund Chemical were used or applied on the land which produced the wheat sold by the Trustee.

CONCLUSIONS OF LAW

■ The parties to this action claim an interest in funds on deposit from a sale of the Debtors' stored grain by the Trustee in this Chapter 7 proceeding. In bankruptcy proceedings, state law determines interests in property and the priority of competing liens. *See In re Orchid Island Hotels, Inc.,* 18 B.R. 926, 936 (Bankr.D.Hawaii 1982); *In re Russo,* 18 B.R. 257, 267 (Bankr.E.D.N.Y.1982); *In re Baxter,* 17 B.R. 932, 933 (Bankr.S.D.Ohio 1982); *In re Bormes,* 14 B.R. 895, 897 (Bankr.D.S.D. 1982). Courts particularly look to state statutes when determining the enforceability and priority of interests in crops. *See United States v. Minster Farmers Cooperative Exchange, Inc.,* 430 F.Supp. 566 (D.N.D.Ohio 1977); *In re Smith,* 40 B.R. 648 (Bankr.N.D.Miss.1984); *In re Roberts,* 38 B.R. 128 (Bankr.D.Kan.1984). Thus, while this is a Court of federal jurisdiction, state law must be applied in determining priority of interests in this dispute.

I.

■ Norwest Bank's interest in the Debtors' 1982 crops was given through a written agreement signed by the Debtor on May 14, 1982. The enforceability of that interest is controlled by section 41–09–16 of the North Dakota Century Code. That section provides, in part, as follows:

Subject to the provisions of section 41–04–18 on the security interest of the collecting bank and section 41–09–13 on a security interest arising under the chapter on sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless all of the following take place:

a. The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and, in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned.

b. Value has been given.

c. The debtor has rights in the collateral.

N.D.Cent.Code § 41–09–16(1) (1983). To be enforceable under this statute, the Bank must in addition to receiving an executed security agreement, have given value and the debtor must have obtained rights in the collateral. The promissory notes of March

272

19, 1982, and May 14, 1982, indicate that Norwest Bank extended value to the Debtor in exchange for receipt of a security interest. Where the collateral given by the debtor is crops to be grown, the debtor is deemed to acquire rights in the collateral at the time the crops are planted. *See United States v. Minster Farmers Cooperative Exchange, Inc.*, 430 F.Supp. at 569; *In re Kruse*, 35 B.R. 958, 965 (Bankr.D.Kan. 1983). Norwest Bank's interest in the Debtors' 1982 crops would have attached and become enforceable when they were planted. Bruce Glinz testified that the wheat on the Martinez land was planted in June of 1982. The Court will presume that the Debtor generally planted his Pembina County acres of wheat in June of 1982 and therefore the Bank's interest attached at that time.

A creditor perfects his interest in property as against third parties under section 41–09–24 of the North Dakota Century Code. That section provides that a security interest becomes perfected when it attaches and all applicable steps required for perfection have been completed. By negative implication, a filed financing statement is required under section 41–09–23 of the North Dakota Century Code for perfection in this instance. A financing statement disclosing an interest in growing crops must be filed in the office where a mortgage on the real estate concerned would be filed. N.D.Cent.Code § 41–09–40(1)(b) (1983). The Office of the Register of Deeds for Pembina County is the proper office for filing of the financing statement in this instance. The filing of the financing statement is completed when the filing officer accepts the statement. N.D.Cent.Code § 41–09–42(1) (1983). The financing statement filed by the Bank indicates it was accepted by the Register of Deeds of Pembina County, North Dakota, on May 18, 1982. The financing statement which is filed covering interests in crops must contain a description of the real estate just as would be contained in a mortgage. N.D. Cent.Code § 41–09–41(9) (1983). The Bank in this instance adequately described the real estate upon which it was claiming an interest in growing crops. Norwest Bank properly completed the applicable steps required for perfection of its interest.

In the event a creditor completes the required steps for perfection prior to attachment of its security interest, the date of perfection is fixed as of the date the interest attaches. N.D.Cent.Code § 41–09–24(1) (1983). *See also ThetMah & Associates, Inc. v. First Bank of North Dakota (N.A.), Minot*, 336 N.W.2d 134, 139 (N.D. 1983). In the present instance, Norwest Bank's interest in the Debtors' crops was perfected at the time its interest attached in June of 1982.

The analysis of the Government's interest in the crops is similar to that of the Bank. The Government extended value to the Debtors as evidenced by the various promissory notes received from 1975 through April of 1981. The Government obtained signed security agreements and properly filed a financing statement on May 18, 1981, adequately listing the real estate upon which the crops were to be grown. The Government's interest, however, did not attach or become perfected until the crops were planted. In this instance, therefore, the Government's interest in the 1982 crops was perfected when the crops were planted in June of 1982. While the interests of the Bank and the Government arose and became perfected at the same time, a subordination agreement between the parties dictates that the Bank would have a prior claim to the crop proceeds over the Farmers Home Administration.

II.

Ostlund Chemical Company and the Drayton Farmers Union claim an interest in the Debtors' crops under section 35–09–01 of the North Dakota Century Code. Section 35–09–01 provides, as follows:

Any person who furnishes or applies fertilizer, farm chemicals, or seed to another to be spread, applied, sown, or planted on lands owned or contracted to be purchased or used, occupied, or rented, upon

filing the statement provided in section 35–09–02, shall have a lien upon all the crop produced from the fertilizer, farm chemicals, or seed so furnished to secure the payment of the purchase price thereof.

N.D.Cent.Code § 35–09–01 (1983). A party is not entitled to the lien provided by section 35–09–01 until it files in the office of the county register of deed a statement which complies with section 35–09–02 of the North Dakota Century Code. Such a lien is not enforced unless there is substantial compliance with the requirements of the statute. *Agricultural Bond and Credit Corporation v. Courtenay Farmers Coop Ass'n.*, 64 N.D. 253, 251 N.W. 881, 887 (1933). The requirements of section 35–09–02 are, as follows:

> Any person entitled to a lien under this chapter, within ninety days after the fertilizer, farm chemicals, or seed is furnished or applied, shall file in the office of the register of deeds of the county in which the fertilizer, farm chemicals, or seed is to be spread, applied, sown, or planted a statement in writing, verified by oath, showing the kind and quantity of the fertilizer, farm chemicals, or seed, its value, the name of the person to whom furnished, and a description of the land upon which the same is to be and has been spread, applied, planted, or sown. Unless the person entitled to the lien shall file the statement within the time herein provided, he shall be deemed to have waived his right thereto.

N.D.Cent.Code § 35–09–02 (1983). The two important requirements under section 35–09–02 with which the Court in this instance is concerned is that the statement be verified by oath and that the statement contain a description of the land upon which the chemicals are applied.

The Farmers Union Oil Company of Drayton, North Dakota, filed lien statements with the Register of Deeds for Pembina County, North Dakota, on July 16, 1982. The lien statements set out the kind of fertilizer or chemical furnished to the Debtors, the date the fertilizer was fur-

nished, the quantity of fertilizer furnished, the value of the fertilizer which was furnished, and the person to whom the fertilizer was furnished. The lien statements also set out the description of the land upon which the fertilizer was applied and contained an oath executed by the president and secretary of Farmers Union which was verified by notary public. Although the land descriptions contained in the lien statements identify the real estate by section, township and range, the descriptions do not identify the county where the land is located.

■ It has been noted that a statutory seed lien will be found invalid where the lien statement contains a description of land wholly different from that upon which the seed was sown. *See Lavin v. Bradley*, 1 N.D. 291, 47 N.W. 384, 385 (1890). Inadvertent mistakes or errors contained in a lien statement which would not mislead one who examines the real estate records will not invalidate the claimed statutory lien. *See Murie v. National Elevator Co.*, 60 N.D. 665, 236 N.W. 269, 271 (1931). In the present instance, the lien statements of the Drayton Farmers Union are records which were filed with the Pembina County Register of Deeds. Anyone examining these statements in connection with a search of Pembina County real estate records would not be misled by the land descriptions merely because they do not disclose that the real estate is found in Pembina County, North Dakota. One who is concerned with Pembina County land records would readily recognize those land descriptions which pertain to Pembina County, North Dakota. Therefore, the lien claimed by the Drayton Farmers Union is not invalid merely because it failed to include the county in its land descriptions.

■ Ostlund Chemical Company filed lien statements with the Register of Deeds for Pembina County, North Dakota, on July 9, 1982, and September 10, 1982. The lien statements filed by Ostlund Chemical Company identified the quantity and description of the chemicals supplied to the Debtors together with its unit price and

total value. The lien statements of Ostlund Chemical set out the description of the properties upon which the fertilizer and chemicals were to have been applied and also contains verifications by notary publics. It has been argued that the lien statements of Ostlund Chemical do not meet the requirement of section 35–09–02 of the North Dakota Century Code which requires that the statement be verified by oath. The North Dakota Supreme Court examined a statute's requirement of verification by oath and stated, as follows:

> It does not simply say "must be verified," but says specifically "it must be verified by oath." That is, an oath must be administered by some official having authority to administer an oath and there must be an affirmative response or some act on the part of the party to whom the oath is administered indicating that he knows he is taking an oath.
>
> The [notary] jurat is no part of the affidavit, but simply evidence that the oath was made and may be shown to be false. If shown to be false, the instrument is not an affidavit. *Turner v. St. John*, 8 N.D. 260, 261, 78 N.W. 340. The prima facie showing established by the jurat is disproved by direct testimony and other facts and circumstances, and the purported threshers' lien is invalid.

*Agricultural Bond and Credit Corporation v. Courtenay Farmers Coop Ass'n.*, 251 N.W. at 886. The lien statements of Ostlund Chemical are both notarized documents. Further, there has been no direct evidence that an oath was not given in connection with lien statements of Ostlund Chemical. Accordingly, the Court must presume that the lien statements were properly verified by oath and meet the requirements of section 35–09–02 of the North Dakota Century Code.

The fertilizer and chemical liens claimed by Drayton Farmers Union and Ostlund Chemical Company are created by statute under Title 35 of the North Dakota Century Code. Having complied with section 35–09–02 of the North Dakota Century Code, both lien claimants are entitled to the lien authorized under section 35–09–01.

The priority of those liens are likewise established under Title 35 of the North Dakota Century Code. Section 35–01–14 of the North Dakota Century Code provides that "[o]ther things being equal, different liens upon the same property have priority according to the time of their creation." N.D.Cent.Code § 35–01–14 (1980). Where Ostlund Chemical and Farmers Union claim an interest in crops grown upon the same parcel of property, the first to file a lien statement gains priority over the other to the extent of the value reflected by that lien statement. Ostlund Chemical filed its first farm chemical and fertilizer lien statement on July 9, 1982, indicating it furnished chemicals of a total value of $225,-891.70 together with interest at the rate of 18% from June 25, 1982, until paid. The Farmers Union Oil Company of Drayton did not file its lien statements until July 16, 1982. The Court finds, therefore, that under section 35–01–14 of the North Dakota Century Code Ostlund Chemical Company is afforded a prior interest to that of the Farmers Union in those instances where both parties claim an interest in crops grown upon the same real property.

### III.

Ostlund Chemical and Farmers Union rely for their priority over the consensual lien claimants, Norwest Bank and the Government, upon the priorities set out under section 35–09–03 of the North Dakota Century Code. That section provides:

> A seed lien acquired pursuant to the provisions of this chapter shall have priority, as to crops covered thereby, over all other liens and encumbrances except threshing liens and crop production liens. A fertilizer or farm chemicals lien acquired pursuant to this chapter shall have priority over all other liens and encumbrances, except a seed lien and those liens acquired pursuant to chapters 35–07 and 35–08.

N.D.Cent.Code § 35–09–03 (1980). Norwest Bank argues that this section only determines priority amongst lien claimants

whose claim arises under Title 35 of the North Dakota Century Code. Even if section 35–09–03 were not construed in such a limited manner, Norwest Bank contends that the statute should not be construed so as to divest a perfected security interest in collateral. Norwest Bank relies for its position on the decision *Strand v. Marin,* 30 N.D. 165, 152 N.W. 280 (1915). The court in *Strand* noted in its syllabus that "[t]he seed lien charge which is provided for by Chapter 210 of the Laws of 1909 is not paramount to the lien of an antecedent real estate mortgage." *Id.* Under present North Dakota statutes, a seed lien is established by the same statute which creates a lien for chemicals and fertilizer applied on land. *See* N.D.Cent.Code § 35–09–01 (1980). In this particular instance, the lien of Norwest Bank attached in June of 1982 when the crops were planted. Ostlund Chemical filed its first lien statement on July 9, 1982, and the Farmers Union filed its lien statements with the Register of Deeds for Pembina County on July 16, 1982. The lien of Norwest Bank was clearly perfected prior to that of the statutory lien claimants.

The Court must find that despite the Bank's prior perfection, the statutory liens of Ostlund Chemical and Farmers Union take priority over the liens of the Norwest Bank. The North Dakota Supreme Court stated when examining the enforceability of a threshing lien:

> The obvious purpose of the statute creating the threshing lien is to insure a person engaged in threshing payment for the services rendered others in threshing grain for them; and hence, when a thresher is engaged to thresh grain, he need not investigate to ascertain what liens or encumbrances there may be outstanding against the grain, for he knows that he is given security upon the grain threshed for the amount of the thresh bill, and this without regard to existing liens or encumbrances.

*Mace v. Cole,* 50 N.D. 866, 198 N.W. 816, 818 (1924) (citations omitted). As with a statutory threshing lien, a creditor claiming a chemical or fertilizer lien must be secure in knowing his interests will be given priority over all encumbrances, including earlier perfected interests, so that the creditor is encouraged to deal with farmers in the midst of their production season. Accordingly, the Court must give priority to Ostlund Chemical and the Farmers Union over those claims of Norwest Bank where all parties claim an interest in crops grown upon the same parcel of real estate.

While Ostlund Chemical and Farmers Union rely upon section 35–09–03 of the North Dakota Century Code for their priority position in the crop proceeds, the Government claims that the priority of their interest is controlled by federal law and not the state statute upon which the chemical lienholders rely. The Government first asserts that it is entitled to priority by reason of 31 U.S.C. § 3713. That statute provides, as follows:

> (a)(1) A claim of the United States Government shall be paid first when—
>
>> (A) a person indebted to the Government is insolvent and—
>>
>>> (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
>>>
>>> (ii) property of the debtor, if *absent* is attached; or
>>>
>>> (iii) an act of bankruptcy is committed; or
>>
>> (B) the estate of a deceased debtor, in the custody of the executory or administrator, is not enough to pay all debts of the debtor.
>
> (2) This subsection does not apply to a case under title 11.

The North Dakota Supreme Court has recognized that by reason of the federal priority statute a lien of the Farmers Home Administration takes priority over a state statutory lien which has also attached to the collateral. *See In re Hillesland's Estate,* 86 N.W.2d 522 (N.D.1957). The court noted in its decision that "[t]he fact that a state statute may attempt to give one of its agencies priority is of no consequence, as a priority given to the United States by congressional act may not be impaired or de-

feated by state law." *Hillesland's*, 86 N.W.2d at 525 (citations omitted). *See also In re Lane's Estate*, 244 Iowa 1076, 59 N.W.2d 593 (1953) (lien of Federal Housing Administration was given priority over statutory lien of the state for old age assistance furnished to decedent). The decisions which give the Government priority over state statutory liens rely, however, on priority conferred by a congressional act. The congressional act in this instance is 31 U.S.C. § 3713. Section 3713(a)(2) clearly prohibits application of the statute to cases arising under Title 11 of the United States Code. The priority afforded by section 3713 is, therefore, not available to a creditor who asserts an interest in a bankruptcy proceeding. It might be argued that section 3713 is not to be applied where the Government asserts an interest in the distribution of the debtor's estate property; that where the Government attempts to prove its priority as a secured claimant in collateral, section 3713 should still apply. The plain language of section 3713(a)(2), however, prohibits application of the section in all cases before the bankruptcy court. One court refused to give effect to section 3713(a)(2) where an involuntary bankruptcy proceeding had been filed only after the district court interpleader action had been pending for some period of time. *See NLT Computer Services v. Capital Computer Systems*, 31 B.R. 960 (D.M.D. Tenn.1983). The facts of that case, however, are dissimilar from those which are presently before this Court. This action was not removed to bankruptcy court but was in fact commenced as an adversary proceeding in the bankruptcy court. The Court must find that 31 U.S.C. § 3713(a)(1) may not be applied in this proceeding.

■ The Government alternatively asserts that while section 3713 may not be applicable, its interest in the crop proceeds must still be given priority over the state statutory liens by reason of federal common law. It has been stated that "[t]he federal common law rule governing priority of federal liens is that 'the first in time is the first in right.'" *Willow Creek Lumber v. Porter County Plumbing*, 572 F.2d

588, 590 (7th Cir.1978). *See also New York Life v. Central National Bank in Chicago*, 453 F.Supp. 37 (D.N.D.Ill.1978); *Elzingar-Volkers v. Federated Electric Cooperative, Inc.*, 449 F.Supp. 341 (D.E.D.Mo. 1978). Under the federal common law rule of priority, a non-federal lien must have been "choate" before the Government's lien attached in order to gain priority over the federal lien. *Willow Creek Lumber*, 572 F.2d at 590. The choateness doctrine has been applied to determine priority of non-tax federal liens as well as tax liens. *Id.* A lien which has not been reduced to judgment will likely be found inchoate. *Id. See also New York Life*, 453 F.Supp. at 39. If the choateness doctrine were applied in this instance, the lien of the Farmers Home Administration would have to be given priority over the statutory lien claimants, Ostlund Chemical and Farmers Union. The Court declines, however, to apply federal common law in resolving this dispute.

■ As was stated at the outset, state law controls the determination of priority interests in a bankruptcy proceeding. Thus, liens of the Farmers Home Administration have been found by a bankruptcy court to be subject to state statutory liens. *See In re Smith*, 40 B.R. 648 (Bankr.N.D. Miss.1984). Even non-bankruptcy decisions indicate that state law controls the interest of the Farmers Home Administration in crops. *See United States v. Minster Farmers Cooperative Exchange, Inc.*, 430 F.Supp. 566 (D.N.D.Ohio 1977). Cases which look to state law in determining the interests of Farmers Home Administration fairly treat that agency as any other similar crop production lender. In the present instance, the lien of the Farmers Home Administration is a consensual lien similar to that of Norwest Bank. Just as Ostlund Chemical and the Farmers Union were found to have prior rights in the collateral over that of Norwest Bank, those statutory lien claimants must also be found to have prior rights over the interest of the United States in the 1982 crops. Such a construction avoids the problem of circular priori-

ties and fairly treats crop production lenders in a similar manner.

■ Marvin Johnson and Florimond Desprez claim an interest in crops grown on their land free from any claim of a creditor of the Debtor, Bruce Glinz. While the landowner's interest in the crops may be free from any consensual lien given by the debtor, the interest of the landowner remains subject to statutory liens which may arise in the collateral. It has been noted that the liens of Ostlund Chemical and the Farmers Union are created by statute. Their interests in the crops do not rest upon any agreement reached with the landlord or the tenant of the property upon which the crops are grown. The statutory lien arising under section 35-09-01 of the North Dakota Century Code exists as long as a proper lien statement is filed by the chemical company against the property upon which the crops are grown. The party who claims an ownership interest in the crops, whether tenant or landowner, takes those crops subject to the statutory lien which attaches by reason of section 35-09-01 of the North Dakota Century Code. Although the landowner may not have incurred the debt upon which the lien is based, the landowner's real estate benefited from the application of the fertilizer and chemicals. The landowner must, therefore, be held responsible for reimbursement of the expenses of the application in those instances where a statutory lien has been perfected against the property. In this instance, the liens of Ostlund Chemical and the Farmers Union take priority over the interests of Marvin Johnson and Florimond Desprez.

## IV.

As a general proposition, the priority of interests between the parties to this action may be set out as follows:

1. Ostlund Chemical Company
2. Farmers Union Oil Company of Drayton, North Dakota
3. Norwest Bank-Jamestown
4. Farmers Home Administration

This general listing of priorities is correct only insofar as all parties have perfected a claim in crops grown on the same parcel of real estate. Ostlund Chemical and the Farmers Union did not perfect an interest in crops grown in Kittson County, Minnesota. As a result of that failure, Norwest Bank claims a prior interest in all crops which were stored in Kittson County, Minnesota. Norwest Bank would have the Court determine that the statutory lien claimants lost their interest in crops grown in North Dakota when those crops were severed from the land and transferred to Minnesota to be stored. The Supreme Court of North Dakota has noted that crops become personalty when they are harvested. *See Lyngstad v. Roy,* 111 N.W.2d 699, 701 (N.D.1961). Section 35-09-01 of the North Dakota Century Code gives to a chemical company a statutory lien "upon all the crop produced from the fertilizer, farm chemicals, or seed so furnished." N.D.Cent.Code § 35-09-01 (1980). The liens which Ostlund Chemical and the Farmers Union assert in this proceeding extend to all crop produced. Section 35-09-01 makes no distinction between growing crops and the proceeds thereof, or harvested and unharvested grain. Parties claiming an interest under section 35-09-01 are given an interest in crops so long as those crops were produced on property described in their lien statements. As a consequence, it is not necessary that those statutory lien claimants comply with section 41-09-27 of the North Dakota Century Code to perfect its interest in proceeds of the crop collateral. Likewise, the statutory lien claimants do not need to comply with the Minnesota equivalent of that statute to perfect their interest in grain which was harvested and stored in Minnesota. Since the statutory lien claimants did not perfect an interest in crops grown in Minnesota, Norwest Bank is given a superior interest in the proceeds of that grain, an amount which the Court has calculated to be $26,138.77.

An examination of Appendix A indicates that not all parties claim an identical interest in crop grown in Pembina County,

North Dakota. Ostlund Chemical has a prior right over all parties to grain grown on the real estate it has set out in its lien statement of July 9, 1982. Occasionally, the Farmers Union Oil Company of Drayton, Norwest Bank, or the Farmers Home Administration will claim an interest in crops grown on real estate in which Ostlund Chemical failed to assert an interest. The Court cannot, however, from the evidence provided, determine whether the crops grown upon those parcels of real estate occasionally omitted from Ostlund Chemical's lien included soybeans, sunflowers, wheat or barley. The Court must find in the limited instances where Ostlund Chemical failed to assert an interest in Pembina County grain that the priority claimant failed to prove its interest in the crop produced on that acreage. The Court does find that Ostlund Chemical has proven its prior position in the proceeds from grain grown in Pembina County, North Dakota, an amount which the Court has calculated to be $87,796.06. The interest of Ostlund Chemical amounts to 77% of the gross proceeds held by the Trustee. Norwest Bank's interest in the proceeds held by the Trustee amounts to 23% of the gross proceeds. The Trustee's expenses from the sale of the grain amounted to $6,045.58. During the pendency of this proceeding, interest has accrued on the funds deposited by the Trustee from the sale of the grain. Norwest Bank and Ostlund Chemical shall share expenses of sale and interest accrued according to their percentage of interest in the gross proceeds.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## APPENDIX A

| | Ostlund Chemical | Drayton Farmers Union | Norwest | FmHA |
|---|---|---|---|---|
| **Township 160 Range 50** | | | | |
| Section 5 | SW¼ | S½ | Lots 2, 3, 4 & 5; NW¼SW¼ | Lots 2, 3, 4 & 5; NW¼SW¼ |
| Section 7 | S½; N½ | NW¼; E½; SW¼; SE¼ | W½NW¼; S½; E½SW¼; NE¼ | NE¼; E½NW¼; W½NW¼; SE¼ |
| Section 8 | Lot 1 & 4SE¼; W½NE¼; SW¼ | ALL | Lot 1; SW¼NW¼; SW¼; SE¼NW¼; Lots 3 & 4SE¼ | S½W½NW¼; N½NW¼; SE¼SE¼ |
| Section 13 | SE¼ | | | |
| Section 16 | Lots 1 & 2 | Lots 1 & 2 | Lots 1 & 2 | N½NW¼ |
| Section 17 | N½ | N½ | N½ | N½ |
| Section 18 | N½ | N½; SE¼ | N½ | N½ |
| Section 19 | NE¼; SE¼ | NE¼ | NE¼ | NE¼ |
| Section 20 | S½ | S½ | | |
| Section 29 | N½ | N½ | | |
| Section 30 | N½SE¼ | E½ | | |
| Section 31 | | | | SE¼ |
| **Township 160 Range 51** | | | | |
| Section 1 | | NW¼ | NW¼ | |
| Section 2 | NW¼ | NE¼NE¼ | NW¼; N½NE¼ | NW¼ |
| Section 12 | E½NE¼ | E½NE¼ | E½NE¼ | E½NE¼ |
| Section 17 | NW¼ | NW¼ | | |
| Section 18 | NE¼ | NE¼ | | |

| | Ostlund Chemical | Drayton Farmers Union | Norwest | FmHA |
|---|---|---|---|---|
| **Township 161 Range 50** | | | | |
| Section 5 | | | SE¼SE¼; Lots 6, 7 & 8 | |
| Section 4 | | | S⅓ | |
| Section 8 | | | | Lots 3 & 4 SE¼; SE¼NW¼; SW¼ |
| Section 24 | | | E½ | |
| Section 29 | | Lots 2 & 3 | Lots 2 & 3 | |
| Section 30 | | SE¼SE¼ | | |
| Section 31 | NE¼; S½ | NE¼; S½ | S½ | SW¼ |
| Section 32 | NW¼ | NW¼ | Lots 1, 2 & 3 | |
| **Township 161 Range 51** | | | | |
| Section 10 | N½NE¼ | N½NE¼ | N½NE¼ | |
| Section 15 | S½ | S½ | S½ | W½SE¼; SW¼ |
| Section 22 | NE¼; NW½NW¼ | NE¼; N½NW¼ | N½NW¼; NE¼ | N½NW¼; NE¼ |
| Section 23 | W½SW¼ | W½SW¼ | | W½SW¼ |
| Section 25 | SW¼ | SW¼ | SW¼ | SW¼ |
| Section 26 | NW¼ | NW¼ | SW¼; NW¼ | NW¼ |
| Section 28 | NE¼ | NE¼ | NE¼ | |
| Section 29 | | | SW¼ | S½SW¼ |
| Section 30 | SW¼ | SW¼ | SW¼ | SE¼SE¼; SW¼ |
| Section 32 | | | | N½NW¼; SW¼NW¼ |
| Section 35 | NE¼ | NE¼ | NE¼ | NE¼ |
| Section 36 | NW¼ | NW¼ | NW¼ | NW¼ |
| **Township 161 Range 52** | | | | |
| Section 2 | SE¼; W½ | SE¼; W½ | NW¼; S½ | NW¼; SE¼; SW¼ |
| Section 3 | E½ | E½ | E½ | SE¼; NE¼ |
| **Township 161 Range 58** | | | | |
| Section 28 | | | | NE¼ |
| **Township 162 Range 51** | | | | |
| Section 36 | S½NE¼ | NE¼; SE¼ | | Lots 1, 2, 3 & 6 |