**FIRST NATIONAL BANK OF SMITH CENTER, KANSAS, Appellant,**

v.

**Robert E. NUGENT, III, Trustee in Bankruptcy, Appellee.**

No. 85–6119–C.

United States District Court, D. Kansas.

April 21, 1987.

---

James L. Bush, Smith Center, Kan., for appellant.

Robert E. Nugent, III, Weinlood, Cole, Shaffer, Lee & Nugent, Hutchinson, Kan., pro se.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case is on appeal from the bankruptcy court order of November 27, 1985, which sustained the Trustee's objection to the secured claim of The First National Bank of Smith Center, Kansas (Bank).

Debtor operated in Esbon, Kansas, a facility buying, selling and storing grain and other supplies. Debtor's business practice was to issue warehouse receipts and scale tickets to those grain producers delivering their grain. Many of the warehouse receipts were designated "open storage." This designation permitted the debtor to commingle the grain of a particular producer with that grain owned by the debtor or other grain depositors. Grain producers either kept their grain with debtor for a storage charge or sold their grain outright to the debtor upon deliver or at a later date. Debtor typically financed its purchases through the Bank. Debtor executed a security agreement and financing statements giving the Bank a security interest in "all grain, or contract rights now owned or hereafter acquired." Debtor filed for Chapter 7 relief on February 28, 1985. As of that date, the quantity of grain on hand in debtor's storage was substantially less than the total represented by outstanding receipts, scale tickets and lien pledges to the Bank.

The bankruptcy court ordered on April 15, 1985, that the grain assets in the Trustee's possession were subject to the expedited proceedings under 11 U.S.C. § 557, and that Trustee's plan for immediate sale of the grain and distribution of proceeds was proper and to be executed forthwith. The Bank filed its proof of claim asserting it had a secured claim and should share in the distribution of sales proceeds pursuant to 11 U.S.C. § 725. The Trustee objected to the Bank's claim arguing that the debtor's account of its grain was overdrawn and that the Bank was not a depositor, but a secured party to the extent of debtor's interest in the proceeds.

Construing the 1984 Bankruptcy Amendments in light of the Senate report to Senate Bill 445, 98th Cong. 1st Sess., the bankruptcy court concluded:

> By reason of that legislation a grain producer/depositor's rights no longer may be treated on a parity with those of a secured creditor. The expedited procedures of section 557 were intended to preclude any such "forced sharing" by producer/depositor with secured lenders. Bankruptcy courts are mandated to or-

der distribution of the stored grain (or proceeds) to the producer/depositor *before* distribution to debtor's secured creditors. (emphasis in original.)

*In re Esbon Grain Co., Inc.*, 55 B.R. 308, 314 (Bankr.D.Kan.1985). The bankruptcy court's order of distribution is affirmed for the reasons stated below.

In reviewing the bankruptcy court's decision, this court must accept the factual findings of the bankruptcy court unless they are clearly erroneous, but the court may review *de novo* the bankruptcy court's legal conclusions. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986). The conflicting legal claims to the sale proceeds of the grain is a question of law for this court's *de novo* review.

■ Rather than a controversy regarding priorities in the distribution of proceeds, the issue before the court is one of ownership rights to the grain/proceeds. State law is determinative of ownership rights in estate property. *State of Mo. v. U.S. Bkrtcy Court, Etc.*, 647 F.2d 768, 774–75 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *In re Clemens*, 472 F.2d 939, 942 (6th Cir.1972); *In re Glinz*, 46 B.R. 266, 271 (Bankr.D.N.D.1984). Under well-established Kansas law, owners of grain who deposit it with warehouses to be commingled with grain of similar kind and quality are tenants in common of the entire mass. *Central States Corp. v. Luther*, 215 F.2d 38, 45 (10th Cir.1954), *cert. denied*, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955); *Flour Mills of America v. Burrus Mills*, 174 Kan. 709, 719, 258 P.2d 341 (1953). See *Preston v. United States*, 696 F.2d 528, 535 (7th Cir.1982), and K.S.A. 84–7–207(2). The relationship between the warehouseman and depositor is that of bailee and bailors. *Luther*, 215 F.2d at 45; *Moses v. Teetors*, 64 Kan. 149, 151, 67 P. 526 (1902). A warehouseman's right "to sell or make other disposition from the common mass is limited to the excess thereof over and above the quantity necessary to redeem the receipts or other commitments issued to the depositors." *Luther*, 215 F.2d at 45 (citations omitted). The grain de-

positor/owner "is protected from the creditors of the warehouseman, who may not take upon execution against him grain in store to such an extent that the owner may not obtain his own." *Moses v. Teetors*, 64 Kan. at 157, 67 P. 526 The Kansas Legislature has recently enacted a provision which clarifies and extends the depositor's ownership interest:

> The owner of grain held in storage by a public warehouseman, as defined in K.S.A. 34–223, in this state, whether such grain is held under open storage or pursuant to the issuance of a warehouse receipt, shall have a prior right to such grain against any other person, subject only to the payment of accrued warehouse charges and the satisfaction of any lien or liens upon such grain and valid against the owner thereof, until the grain is either removed from storage by the owner or sold by the owner.

> As used in this section, the term "open storage" means the storage of grain pursuant to the issuance of a scale ticket regardless of whether the grain is retained in the warehouse or elsewhere; and the term "owner" means the holder of any warehouse receipt or receipts or of any scale ticket or tickets for grain held in storage by a public warehouseman.

K.S.A. 34–2,107 (1981).

■ These authorities support the conclusions that depositors/owners of grain are tenants in common as to the commingled mass and that the warehouseman or his creditors cannot take, sell or execute upon grain to the extent that the ownership interest of the depositors/owners cannot be met from the warehouse inventory. In other words, the warehouseman's ownership interest in the commingled mass is subject to this responsibility to redeem and deliver upon the receipts and tickets. It necessarily follows that where a deficiency exists in the warehouse inventory such that all receipts and tickets of grain depositors/owners cannot be satisfied, the warehouseman cannot claim any ownership interest in the commingled mass until the other ownership interests of grain depositors/owners have

been met. The Bank's secured claim exists to the extent of the "creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). In the present case, the debtor/warehouseman lacked any ownership interest in the commingled grain because of the extent of the established deficiency. Consequently, the bankrupt estate does not include an ownership interest in the commingled grain which would entitle the secured claim asserted against any such interest to share pro rata in the distribution of the proceeds from the grain sale.

The Bank argued before the bankruptcy court that it stepped into the shoes of a depositor as to that grain owned by the debtor and, therefore, was entitled to share pro rata with all other depositors. In support of that argument, the Bank cited *Flour Mills of America v. Burrus Mills*, 174 Kan. at 719, 258 P.2d 341. That decision of the Kansas Supreme Court is silent as to the right of a warehouseman to share in any pro rata distribution. The deficiency in grain inventory in that case was created by flood damage and was not caused by anything for which the warehouseman was responsible. Being distinguishable from *Burrus Mills*, the present case fits the following rule:

> A warehouseman who puts his own fungible goods into a mass of similar deposited goods becomes as to such goods a tenant in common of the mass. However, if a deficiency occurs in the amount of property in the mass, from any cause for which the warehouseman is responsible, the remaining goods are appropriated for the benefits of holders of other warehouse receipts.

78 Am.Jur.2d § 183 (1975). When the Bank stepped into the debtor's shoes as to the commingled grain, it acquired no ownership interest.

In light of the above discussion, the court finds it unnecessary to discuss the judicial construction given by the bankruptcy court to the 1984 Bankruptcy Code amendments. As it appears from the record that the producers/depositors must share pro rata the grain sale proceeds, the court need not address the question of priorities under 11 U.S.C. § 507(a)(5).

IT IS THEREFORE ORDERED that the bankruptcy court's order of November 27, 1985, is affirmed for the above stated reasons.