## In re BUCYRUS GRAIN CO., INC., Debtor.

### Bankruptcy No. 84–20269–7.

United States Bankruptcy Court, D. Kansas.

Sept. 25, 1987.

---

C. Maxwell Logan, of Shook, Hardy & Bacon, Overland Park, Kan., for debtor.

Robert A. Olsen, Asst. U.S. Atty., Kansas City, Kan., for U.S.

James S. Willis, Kansas City, Kan., trustee, pro se.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came for hearing on June 17, 1987, on the United States' motion to reconsider order denying its motion for distribution of funds representing interest from proceeds from the sale of grain. The United States appeared through Robert A. Olsen, Assistant United States Attorney. The trustee of Bucyrus Grain, James S. Willis, appeared pro se.

### FACTS

The facts in this matter are not in dispute and can be derived from the record. The debtor, Bucyrus Grain, operated a grain elevator buying, selling and storing wheat, milo, corn, soybeans, and oats in Bucyrus, Kansas. The debtor's business practice was to issue warehouse receipts and scale tickets to those grain producers delivering their grain. Many of the warehouse receipts were designated "open storage" which permitted the debtor to commingle the grain of a particular producer with that grain owned by the debtor or other grain depositors. Grain producers either kept their grain with the debtor for a storage charge or sold their grain outright to the debtor upon delivery or at a later date. The moving party in this case, the United States acting through its agency, the Commodity Credit Corporation (CCC), Department of Agriculture, was one particular depositor that held warehouse receipts representing several thousand bushels of grain on open storage at Bucyrus Grain Company.

On March 30, 1984, the debtor, Bucyrus Grain Company, Inc., filed for a petition for relief under chapter 7 of Title 11, United States Code. James S. Willis was appointed the chapter 7 trustee of the estate. Subsequently, the Kansas Grain Inspection Department audited the elevator to determine the amount and owner of the grain stored. The audit reflected a deficiency in the amount of grain to cover the outstanding warehouse receipts.

On May 16, 1984, Willis filed a notice of intended private sale of all the grain to Miami County Coop at Kansas City Price less freight of ten cents per bushel, subject to grade. The notice was sent with opportunity for hearing meaning unless an objection is filed, the sale will be held without a hearing. On May 25, 1984, three producers, The Effertz Bros., Inc., Dave Nellor, and the Anderson Brothers, objected to the proposed sale. On May 29, 1984, this Court heard and sustained the trustee's notice of intended sale.

Sometime thereafter, the trustee sold the grain and deposited the proceeds in interest bearing accounts. On August 21, 1984, trustee filed a notice of intended partial distribution (did not include payments from bond company covering grain shortage) to holders of warehouse receipts in the total amount of $543,544.26 and payment of fees and expenses in the amount of $24,659.36. One day later, the trustee applied for approval of interim compensation and reimbursement of expenses incurred by himself and others. On September 19, 1984, this Court sustained the trustee's notice of intent as to partial distribution with the exception of the interest earned. The Court ordered the interest to be retained in an interest bearing account until the Court could rule on its disposition at a later date. On September 24, 1984, the trustee issued to the United States a check in the amount of $18,167.62. On September 27, 1984, the trustee issued two checks to the United States in the sum of $3,006.50 and $162,-332.36. These three checks represented the proceeds derived from the sale of the grain encompassed by the government's warehouse receipts. There was no distribution of any of the interest which was earned on such proceeds from the date of sale until the date of distribution.

On March 3, 1987, the United States acting through its agency, CCC, filed a motion for distribution of funds representing the interest on its proceeds plus any more interest that has accrued by reason of deposit of that interest by the trustee in the account. On April 20, 1987, the trustee responded to the motion.

On April 22, 1987, this Court heard the United States' motion for distribution. The Court denied the motion from the bench and held that the interest was property of the estate under the 1982 case of *In re Cox Cotton Company*, 24 B.R. 930, 7 C.B.C.2d 1195 (E.D.Ark.1982).

On May 4, 1987, the United States filed a motion to reconsider this Court's order denying the motion for distribution, and brought to this Court's attention the recent Kansas case of *In re Esbon Grain Co., Inc.*, 55 B.R. 308 (Bankr.D.Kan.1985), affrm'd *First National Bank of Smith Center, Kansas v. Nugent*, 72 B.R. 528 (D.Kan.1987). This Court heard the motion and response on June 17, 1987, and took the matter under advisement. Now, after reviewing the *Esbon Grain* case, this Court is prepared to reconsider its earlier ruling.

### CONCLUSIONS OF LAW

The United States' claim in this case is really two-fold. The United States wants (1) distribution of the interest earned on the proceeds resulting from the sale of the grain encompassed by its warehouse receipts *from* the date of the sale of the grain *to* the date of the distribution of the proceeds less any trustee's fees and estate expenses incurred by the estate in selling the grain (3 or 4 months time); and (2) distribution of the interest earned on the above interest to date (3 years time).

The United States' claim gives rise to the question in this case of whether all this interest is property of the estate or whether it's property of the grain depositor, CCC. The answer to this question, of course, really depends on the underlying ownership status of the actual grain at the Bucyrus Grain Company elevator. Was the grain property of the estate or was it property of the grain depositor?

In answering this question, this Court finds that the recent District Court case of *First National Bank of Smith Center v. Nugent (In re Esbon)*, 72 B.R. 528 (D.Kan. 1987) (J. Crow) is very instructive. Judge Crow found that the producers/depositors own the grain as tenants in common and

that the debtor/warehouseman lacks any ownership interest in commingled grain due to deficiency in warehouse inventory and thus, the bankruptcy estate did not include ownership interest in the grain. In arriving at this conclusion, Judge Crow stated in part:

Rather than a controversy regarding priorities in the distribution of proceeds, the issue before the court is one of ownership rights to the grain/proceeds. State law is determinative of ownership rights in estate property. *State of Mo. v. U.S. Bkrtcy Court, Etc.*, 647 F.2d 768, 774–75 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *In re Clemens*, 472 F.2d 939, 942 (6th Cir.1972); *In re Glinz*, 46 B.R. 266, 271 (Bankr.D.N.D.1984). Under well-established Kansas law, owners of grain who deposit it with warehouses to be commingled with grain of similar kind and quality are tenants in common of the entire mass. *Central States Corp. v. Luther*, 215 F.2d 38, 45 (10th Cir.1954), *cert. denied*, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955); *Flour Mills of America v. Burrus Mills*, 174 Kan. 709, 719, 258 P.2d 341 (1953). See *Preston v. United States*, 696 F.2d 528, 535 (7th Cir.1982), and K.S.A. 84–7–207(2). The relationship between the warehouseman and depositor is that of bailee and bailors. *Luther*, 215 F.2d at 45; *Moses v. Teetors*, 64 Kan. 149, 151, 67 P. 526 (1902). A warehouseman's right "to sell or make other disposition from the common mass is limited to the excess thereof over and above the quantity necessary to redeem the receipts of other commitments issued to the depositors." *Luther*, 215 F.2d at 45 (citations omitted). The grain depositor/owner "is protected from the creditors of the warehouseman, who may not take upon execution against him grain in store to such an extent that the owner may not obtain his own." *Moses v. Tettors*, 64 Kan. at 157, 67 P. 526. The Kansas Legislature has recently enacted a provision which clarifies and extends the depositor's ownership interest:

The owner of grain held in storage by a public warehouseman, as defined in

K.S.A. 34–223, in this state, whether such grain is held under open storage or pursuant to the issuance of a warehouse receipt, shall have a prior right to such grain against any other person, subject only to the payment of accrued warehouse charges and the satisfaction of any lien or liens upon such grain and valid against the owner thereof, until the grain is either removed from storage by the owner or sold by the owner.

As used in this section, the term "open storage" means the storage of grain pursuant to the issuance of a scale ticket regardless of whether the grain is retained in the warehouse or elsewhere; and the term "owner" means the holder of any warehouse receipt or receipts or of any scale ticket or tickets for grain held in storage by a public warehouseman.

K.S.A. 34–2, 107 (1981).

 These authorities support the conclusions that depositors/owners of grain are tenants in common as to the commingled mass and that the warehouseman or his creditors cannot take, sell or execute upon grain to the extent that the ownership interest of the depositors/owners cannot be met from the warehouse inventory. In other words, the warehouseman's ownership interest in the commingled mass is subject to this responsibility to redeem and deliver upon the receipts and tickets. It necessarily follows that where a deficency exists in the warehouse inventory such that all receipts and tickets of grain depositors/owners cannot be satisfied, the warehouseman cannot claim any ownership interest in the commingled mass until the other ownership interests of grain depositors/owners have been met. The Bank's secured claim exists to the extent of the "creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). In the present case, the debtor/warehouseman lacked any ownership interest in the commingled grain because of the extent of the established deficiency. Consequently, the bankrupt estate does not include an ownership interest in the commingled grain which would entitle the secured claim asserted against any such interest to share pro rata in the distribution of the proceeds from the grain sale.

*Id.* at 530–31.

I agree with the analysis and conclusions of the above case and apply it to this case. Except of course to the extent the expenses incurred by the estate in selling the grain, the bankruptcy estate does not include an ownership interest in the commingled grain. As such, the United States is entitled to: (1) distribution of the interest earned on the proceeds resulting from the sale of the grain encompassed by its warehouse receipts *from* the date of the sale of the grain *to* the date of the distribution of the proceeds less any expenses incurred by the estate in selling the grain; and (2) distribution of the interest earned on the above interest to date.

This Court notes that the trustee has raised the question of whether the United States has "waived" any right to the interest by failing to object to the Notice of Intended Sale which provided that all that the warehouse receipt holders would receive was the dollar value equivalent of the amount of grain from which they held warehouse receipts as of the date of filing. This Court, however, finds the trustee's waiver argument unpersuasive. Although the United States did not object, other parties did object at the hearing on the distribution and this Court specifically held the question on the interest open at the time.

IT IS THEREFORE, BY THE COURT, ORDERED That the United States' motion for reconsideration is sustained and that the United States is entitled to: (1) distribution of the interest earned on the proceeds resulting from the sale of the grain encompassed by the warehouse receipts *from* the date of the sale of the grain *to* the date of the distribution of the proceeds less any trustee's fees and estate expenses incurred in the selling of the grain; and (2) distribution of the interest earned on the above interest to date.