**In re HAWKINS COMPANY, LTD., an Idaho Corporation, Debtor.**

**Bankruptcy No. 89–00033–11.**

United States Bankruptcy Court,
D. Idaho.

July 28, 1989.

See also, Bkrtcy., 101 B.R. 231.

Jerry Jensen, Nelson, Rosholt, Robertson, Tolman & Tucker, Boise, Idaho, for debtor-in-possession.

Larry E. Prince, Holland & Hart, Boise, Idaho, for G. Kent Taylor.

Lloyd J. Walker, Twin Falls, Idaho, for various growers.

Jeffery J. Ventrella, Elam, Burke & Boyd, Boise, Idaho, for Department of Agriculture.

Thomas C. Mannschreck and Mark B. Perry, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for First Sec. Bank.

David L. Whitney and Ronald P. Rainey, Alexanderson, Davis, Rainey, Whitney & Kerrick, Caldwell, Idaho, for California Bean Growers.

R. Michael Southcombe and Joseph M. Meier, Clemons, Cosho & Humphrey, Boise, Idaho, and Marc R. Carlson, Hopp, Beckmann & Lionberger, Longmont, Colo., for Klein Bros, Ltd.

Michael G. Morfitt, Boise, Idaho, for Small Business Admin.

Chris H. Hansen, Quane, Smith, Howard & Hull, Boise, Idaho, for Western Trading Co.

Gary L. McClendon, Boise, Idaho, for U.S. Trustee.

John M. Melanson, Weaver & Melanson, Buhl, Idaho, Richard D. Greenwood, Stephan, Slavin, Kvanvig, Greenwood, Stone & Trainor, Thomas M. Robertson, Coleman, McIntyre, Ritchie & Robertson, Fred D. Decker, Decker & Hollifield, Paula Brown Sinclair, Twin Falls, Idaho, Terry L. Myers, Givens, McDevitt, Pursley, Webb & Buser, Richard A. Cummings, Imhoff & Lynch, Boise, Idaho, for various growers.

Tom N. Ambrose, Lindsay, Hart, Neil & Weigler, Boise, Idaho, for United Fire and Casualty.

Grant Atkinson, on his own behalf.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

### BACKGROUND

At the time of the filing of this Chapter 11 petition, a shortage of beans existed in the debtor's agriculture commodities warehouse storage facility which is the subject of this case. At issue, currently, are the competing claims of ownership to the beans or proceeds of the beans in debtor's possession on January 6, 1989, the date of the filing. The competing interests are: the farmers, growers or producers of the beans who deposited beans with the debtor-in-possession, those entities classified as purchasers of beans who paid the debtor-in-possession for the beans but did not take delivery, and First Security Bank of Idaho, which institution claims a lien on the beans or proceeds thereof by virtue of the grant of security interests in its property by the debtor. The issues have been raised by various pleadings including: responses to the bills of particular, the various motions of Klein Bros. for subordination of producer claims to the Klein Bros. claims and to obtain possession of the beans under 11 U.S.C. § 557, the motion for summary judgment of the California Bean Growers Association, the motion of G. Kent Taylor for a determination of ownership to 10,500 cwt of beans, and the motions by the various groups of producers to determine priority interest in the beans in the debtor's warehouse at the time of the filing of the

Chapter 11 petition. These pleadings raise important factual and legal issues under the expedited procedure provisions of 11 U.S.C. § 557.

The producers motion requests rulings to the effect: the producers are the owners of the beans or the proceeds thereof, the beans or proceeds of the beans are not property of the estate, Klein Brothers or G. Kent Taylor have no interest in the beans, First Security Bank has no interest in the beans, and lastly, the debtor-in-possession has no interest in the beans.

The major issues are:

1. The status of the various producers as sellers or bailors;

2. The title status of the two purchaser entities;

3. The existence of and the extent of any interest of First Security Bank in and to the beans as a result of the Bank's security interests in debtor's property;

4. Priority of the claimants to the proceeds of the beans.

## FACTS

Some 445 separate entity claims have been filed under the expedited proceeding orders previously entered under the provisions of Section 557. Most of these claims are claims of farmer-grower-producers of beans. These producers claim ownership to the beans which they deposited in the debtor's warehouse prior to the filing of the Chapter 11 petition. The filing of the Chapter 11 petition was occasioned by the fact the Idaho Department of Agriculture had examined the status of the inventory and obligations of the debtor and had applied to the District Court of the Fifth Judicial District of the State of Idaho for seizure and possession of the debtor's warehouse facilities located in Twin Falls

County, Idaho. An order was issued by that Court on December 8, 1988 allowing the Department to take possession of the warehouses, including, the bean inventory.

At the time of the filing of the Chapter 11 petition the warehouse held approximately 188,950 cwt of beans of various varieties. By previous court orders, the debtor-in-possession has been allowed to process and sell the beans with all claims of ownership and encumbrances to attach to the sale proceeds.

In addition to the claims of the producers, which claims are based on ownership and bailment theories, the two purchasers, Klein Brothers, Ltd. and G. Kent Taylor, claim ownership to certain quantities of the beans. First Security Bank claims a security interest in the beans. The claims of the producers amount to some 291,000 cwt. Klein Brothers claims 27,488.80 cwt and G. Kent Taylor claims 10,500 cwt. It is estimated the shortfall in the bean inventory may reach as high as 300,000 cwt.

## AN ANALYSIS OF THE PRODUCERS' CLAIMS

The character of the producers' claims must be determined by State law, as opposed to Federal Bankruptcy law, in the context of the framed issues.[1] A possible exception is the effect of the provisions of Bankruptcy Rule 3001(g). Although Idaho statutes contain no ready answer to the question of the status of the producers as depositors, and there is little decisional law on the subject,[2] at least three categories of depositors of grain in warehouse are possible.[3]

These categories are:

1. A deposit of the commodity for "storage, handling, processing, reconditioning or shipment."

---

1. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See Also, First National Bank of Smith Center, Kansas v. Nugent,* 72 B.R. 528 (D.Kan.1987); *State of Missouri v. U.S. Bankruptcy Court for the E.D. of Arkansas,* 647 F.2d 768 (8th Cir.1981); *In re Bearhouse, Inc.,* 84 B.R. 552 (Bankr.W.D.Ark.1988). Despite the rationale of *In re Esbon Grain Co., Inc.,* 55 B.R. 308 (Bankr.D.Kansas, 1985), there are no substantial substantive provisions contained

in 11 U.S.C. § 557, aside from facilitating the conclusion the grain must be considered as property of the estate.

2. *See Jensen v. U.S. Fidelity and Guaranty Co.,* 78 Idaho 145, 298 P.2d 976 (1956).

3. Idaho Code §§ 69–202(5), 69–202(14) and 69–222 and 28–1–201(15).

2. A sale of the commodity to the warehouse.

3. A consignment for sale.

 The first category above listed would constitute a bailment under Idaho law,[4] with title to the commodity remaining in the depositor. The second category would obviously involve a passage of title to the commodity,[5] while the third category would constitute a bailment until the time of sale. Most all the producer claims are bailments, and at this point in the Section 557 proceedings, most of those claims would be entitled to the benefits of Bankruptcy Rule 3001(g). Thus, to the extent the producers possess documents of title under § 3001(g) their claims are prima facie valid, subject to evidence which the debtor-in-possession or other parties must produce to defeat or alter the claim. Those producers who have filed claims not based on documents of title have the burden of proving their respective claims.

## THE STATUS OF THE PURCHASERS

### KLEIN BROS., LTD.

The claim of Klein Bros. as owner of 27,488.80 cwt of beans is based on two warehouse receipts, each dated September 8, 1987 for a total of 400,000 lbs. of pinto beans. The remainder of the Klein Bros. document of title consist of sale confirmation forms, checks, purchase contracts, invoices and bills of lading.

### G. KENT TAYLOR

The Taylor claim is based on two warehouse receipts, dated September 3, 1988 for 800,000 lbs. of pintos and October 24, 1988 for 250,000 lbs. of pintos.

### I.

The following defenses to the Klein Bros. claim have been pleaded by the debtors.

1. The transactions may constitute preference transfer.

2. The records of the debtor are inconsistent with the claim.

3. The claimant's documents of title do not meet the requirements of state law.

 The major issue emanating from the June 30, 1989 hearing is whether Klein Bros., as a purchaser, can qualify as an owner of the beans as a result of the purchase and, if so, the status of their ownership claim as a priority claim paramount to the claims of the producers. To the extent any of the purchasers' documents of title were delivered within the preference period, the preference issues will have to be raised independently. The inconsistency of the records allegation will also have to be determined at a hearing on the issue. However, the status of the conformance of the claimant's documents of title to state law is an issue capable of resolution at the present time. I conclude the documents upon which Klein Bros. relies, that is, sales confirmations, payment records, either check or issue, purchase contracts, and invoices satisfies the requirements of Bankruptcy Rule 3001(g) and as documents of title are not contrary to state law provisions.[6]

### II.

The following defenses to the G. Kent Taylor claim have been pleaded by the debtors.

1. The transaction may constitute a preference.

2. The claimant's documents of title may not meet the requirements of state law.

Also at issue, of course, is the major issue, as with the Klein Bros. claim, of whether the claimants qualify as owners of the beans purchased by them and as such, are entitled to possession of the beans as against the claims of the producers.

---

**4.** *Torix v. Allred,* 100 Idaho 905, 606 P.2d 1334 (1980).

**5.** When title passes is determined by I.C. § 28–2–401.

**6.** *Cf:* Idaho Code § 28–1–201(15); *Midland Bean Company v. Farmers State Bank,* 37 Colo. App. 452, 552 P.2d 317 (1976).

Again, as was the conclusion applicable to the Klein Bros. claim, the preference issue will have to be independently determined. The Taylor documents of title are warehouse receipts which obviously qualify as documents of title under Bankruptcy Rule 3001(g) and I.C. § 28–1–201(15).

Klein Bros. and G. Kent Taylor are also entitled to the evidentiary effect afforded by Bankruptcy Rule 3001(g); thus, their respective claims will be considered as prima facia evidence of the validity and the amount of the claims dependent upon the qualification of their documents as documents of title.

Thus, both Klein Bros. and Taylor qualify as prima facia claimants based on their respective claims of ownership of the beans purchased, under the provisions of Bankruptcy Rule 3001(g).

The next inquiry will be directed to other provisions of law which could defeat the right of these purchasers to share in any pro-rata distribution of the beans or the proceeds of the sale of the beans, or the purchasers' claim of entitlement to the beans or proceeds exclusive of any right to such remaining in the producers. Since the latter issue is the result aggressively advocated by Klein Bros. and Taylor, it will be treated first.

■ Klein Bros. and Taylor contend they are entitled to recover the beans, or the proceeds of the beans, which they purchased under the entrustment provisions contained in Idaho Code § 28–2–403(2) and (3).[7] Without making findings as to whether the producers entrusted possession of their beans to the debtor, whether the debtor was a "merchant who deals of goods of that kind", what rights were transferred and whether the purchasers were buyers in the ordinary course of business from the contents of the present record, I conclude the entrustment provisions are not applicable to warehouse deposits since the purchasers did not take possession of the beans purchased, but, instead, left them in the custody and possession of the warehouse. Delivery to the purchaser is required by I.C. § 28–7–205 before a purchaser takes free of any claim under a warehouse receipt.[8] That I.C. § 28–2–403(2) is to be considered "... in consonance with the explicit provisions of Section 7–205 on the powers of a warehouseman who is also in the business of buying and selling fungible goods he warehouses" is thus recited in the comments of the drafters of the Uniform Commercial Code following Section 2–403 (I.C. 28–2–403).

■ Furthermore, to require delivery to the purchaser of the goods under the entrustment provisions, particularly in the instance of fungible goods in warehouses, illustrates the basic purpose of the entrustment theory which is to afford protection to a bona fide purchaser in the ordinary course of business. If the purchasers had taken delivery of the beans the policy sought to be effectuated by the entrustment theory would obviously have been fulfilled.

Perhaps the most persuasive argument against the imposition of the delivery requirement offered by the purchasers is the contention delivery did in fact occur at the time the certificates of title were delivered to the purchasers. Delivery can, in some circumstances, be effectuated without a change of possession. But actual delivery must be required where fungible goods are left in the possession of the warehouseman

---

7. Section 28–2–403(2) and (3) states:
 (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights to the entruster to a buyer in ordinary course of business.
 (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery of acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

8. Section 28–7–205 states:
 Title under warehouse receipt defeated in certain cases.—A buyer in the ordinary course of business of fungible goods sold and delivered by a warehouseman who is also in the business of buying and selling such goods takes free of any claim under a warehouse receipt even though it has been duly negotiated.

by the purchaser in order for the entrustment provisions to be effective.[9]

This conclusion is not based solely on the fact of non-delivery of the commodity. It is further based on the concept of a purchaser allowing the commodity to remain in the possession of the warehouse in the instance of a shortage of the commodity to meet the warehouse obligations. Where the possession of the beans is "entrusted" under the shortage conditions, the purchasers must share in the loss on the pro-rata provisions of I.C. § 28–7–207(2). There is nothing contained in I.C. § 28–2–403 which dictates a contrary result. The purpose and intent of the entrustment provisions is to afford title protection to a commodity purchaser as against the unpaid depositor of the commodity in situations other than a warehouse in a shortage position.

The claims of Klein Bros., Kent Taylor, and the recently filed motion for allowance of a claim by Wholesale Trading Co. for recovery or entitlement to beans respectively purchased or their proceeds will be denied.

However, it would appear, at least at this point in the proceedings under Bankruptcy Rule 3001(g), the Klein Bros. and Taylor claims would be entitled to participate in any pro-rata distribution made in accordance with the provisions of I.C. § 28–7–207(2).[10]

## FIRST SECURITY BANK

The validity of the First Security Bank security interest is not contested; it is the extent of that interest which is contested, primarily the extent such interest would attach to the beans in possession of the debtors at the time the debtor's petition was filed. The Bank's interests would of necessity be limited to the debtor's interest in the beans.[11] The Bank's interest in the beans, except to the extent determined by these findings of fact and conclusions of law, will await the determination of the remaining issues to be decided concerning the claims of the respective producers.

## CONCLUSIONS

Thus the following conclusions of law can be made.

1. Those claims of producers possessing documents of title are prima facie the owners of those beans as indicated on their respective documents of title, subject to the defenses interposed, including evidence of a sale to the debtor.

2. Producers not possessing documents of title have the burden of proving their respective claims.

3. The purchasers Klein Bros. and G. Kent Taylor are prima facie the owners of the beans they respectively purchased.

4. All claimant-owners of beans are ultimately entitled to share pro-rata in the distribution of the remaining beans or proceeds thereof.

5. Beans owned by others, but in the possession of the debtors-in-possession, are property of the Chapter 11 estate for purposes of resolution of claims under 11 U.S.C. § 557.

6. The possession motions of Klein Bros. Ltd. and G. Kent Nelson must be denied.

A further pre-trial hearing will be scheduled by separate order to determine the method of, and the necessity of scheduling hearing dates for, the further resolutions of factual issues concerning the claims of ownership to the beans and any other matters remaining for factual determination.

<hr>

9. The provisions of I.C. § 28–7–207(2) must also be considered as evidence of legislative intent to preclude a priority position under the entrustment doctrine.

10. *In re Bearhouse, Inc.,* 84 B.R. 552, 564 (Bankr.W.D.Ark.1988).

11. *See, First National Bank of Smith Center, Kansas v. Nugent,* 72 B.R. 528 (D.Kan.1987).