**SALEM NATIONAL BANK,
Plaintiff–Appellant,**

v.

**Larry J. SMITH, et al.,
Defendants–Appellees.**

**No. 88–2715.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1989.
Decided Nov. 21, 1989.

Ronald L. Pallmann, Suelthaus & Kaplan, Fairview Heights, Ill., for plaintiff-appellant.

Stephen B. Clark, Asst. U.S. Atty., East St. Louis, Ill., for FmHA.

S. Gene Schwarm, Vandalia, Ill., for debtors.

Pamela S. Lacey, Benton, Ill., for trustee.

Before EASTERBROOK and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Purchase-money security interests usually take priority over earlier security agreements with after-acquired-property clauses. A purchase-money advance brings in a new asset, and because the security interest cannot exceed the value of the asset existing creditors are no worse off. At the same time, the purchase-money loan facilitates a transaction that might be too complicated to arrange if the purchase-money lender had to arrange for subordination agreements with all existing secured creditors.

Loans for the purchase of seed and the expenses of planting crops are varieties of purchase-money financing. The Uniform Commercial Code treats crop loans differently from purchase-money loans, however. Section 9–312(2) gives the crop loan priority only with respect to sums due on other loans for more than six months:

> A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest.

Illinois enacted this provision along with the rest of the UCC, Ill.Rev.Stat. ch. 26 ¶ 9–312(2). Two secured lenders to a farmer in Illinois disagree about its application.

Over the years the Farmers Home Administration made ten loans to Larry J. Smith. Payments came due each January 1. By late 1984 Smith was some $133,000 in arrears. On January 1, 1985, additional installments exceeding $85,000 matured. Smith did not pay. On May 20, 1985, he borrowed $75,000 from Salem National Bank to produce that spring's crop. He did not repay Salem Bank either; instead he filed a petition under the Bankruptcy Code. The crops were harvested and sold; the net proceeds of about $72,000 were segregated and will be paid to whichever lender has the senior interest. Both lenders filed financing statements in the appropriate place. The FmHA filed first, giving it priority under § 9–312(5), but the Bank contends that it has super-priority under § 9–312(2).

Both the bankruptcy court, 82 B.R. 62 (Bankr.S.D.Ill.1988), and the district court held that the FmHA's interest prevails because $85,000 of its debt came due less than six months before the crops were planted. We have jurisdiction of the Bank's appeal under 28 U.S.C. § 158(d). A plan of reorganization was confirmed in January 1988, leaving the distribution of this kitty for later resolution. Once the court directed payment to the FmHA, nothing remained of the case. The district court's opinion suggested that there might be one more question: whether Smith's crops became "growing crops by planting or otherwise" within six months of the installments due on January 1, 1985, on which the record is silent, but that court affirmed the bankruptcy court's unconditional decision in FmHA's favor. Because the judgment is final, even though the rationale implies an unsettled question, we have jurisdiction. (For what it is worth, the parties agree that Smith planted his crops before July 2.)

Salem Bank concedes that if Smith had been current on his obligations to the FmHA six months before the planting, then $85,000 due on January 1 would take precedence over its later loan. It contends, however, that because Smith was behind in his payments, § 9–312(2) gives it priority. There were "obligations due more than six months before the crops become growing crops", and that, Salem Bank insists, is that. Yet § 9–312 does not say that if any obligation is more than six months past due, then the new loan stands first in line. It says, rather, that the production loan prevails *"to the extent that* such earlier interest secures obligations due more than six months before the crops become growing crops" (emphasis added), which distinguishes between sums due longer than six months and those first payable within that period. Salem Bank responds that $133,000 was overdue, so it takes priority to that "extent"; as its loan is only $75,000, its full loan has priority. Section 9–312(2) does not measure the priority for the production loan by the extent of the overdue debt; instead it gives priority over that debt. When he planted his crops, Smith owed FmHA about $218,000. All agree that the Bank's loan comes ahead of the $133,000 that had been due longer than six months; it is tolerably clear that the Bank's loan comes behind the other $85,000. The "extent" to which the bank prevails over the FmHA is $133,000, leaving its loan junior to the current $85,000.

As the Bank observes, treating its new money as junior to the FmHA's old money makes it harder for farmers with overdue installments to obtain production credit. The new lender needs subordination agreements from existing creditors. This is costly and could make credit less available (or change terms for the worse) even when a new crop is likely to produce a net profit after repaying the production loan. That the farmer was behind in payments six months before the planting has nothing to do with this difficulty, however. If Smith had been current on December 31, 1984, the $85,000 payable on January 1 would have come ahead of the Bank's loan, unless the FmHA agreed to subordinate its position (or the Bank made Smith a loan large enough to bring the FmHA's loans current). Some incongruities are unavoidable. FmHA's notes allowed it to accelerate the remaining payments if the borrower fell behind. It did not do this; had it done so, the January 1, 1985, installment would have been more than six months overdue by the time of the planting, and the Bank would have had priority. Such oddments,

together with the difference between production-credit loans and purchase-money financing, suggest that the UCC may need attention, but revision is not part of the judicial function.

Only two other decisions address our problem; both reach the same conclusion as the district and bankruptcy judges in our case. *In re Connor*, 733 F.2d 523 (8th Cir.1984); *United States v. Minster Farmers Cooperative Exchange, Inc.*, 430 F.Supp. 566, 570–71 (N.D. Ohio 1977). Students of the UCC agree. E.g., James J. White & Robert S. Summers, 2 *Uniform Commercial Code* § 26–6 at 517 (3d ed. 1988) ("[S]ubsection (2) entitles one to priority only over obligations more than six months overdue at the time the crops in question become growing crops."). So does the principal drafter of Article 9. Grant Gilmore, 2 *Security Interests in Personal Property* § 32.5 at 868 (1965) ("The secured party who qualifies for the § 9–312(2) priority wins over an earlier perfected interest in the crop only 'to the extent that' the earlier interest [secures obligations that have been in default for six months]. The crop lender gets no other priority over earlier perfected interests; with respect to obligations current (i.e., less than six months overdue) at the time the crops becoming [sic] 'growing,' the holder of the earlier security interest has [priority].''). Salem Bank believes that the Supreme Court of Illinois would interpret § 9–312(2) differently, and it directs us to *Decatur Production Credit Ass'n v. Murphy*, 119 Ill.App.3d 277, 289–90, 74 Ill.Dec. 765, 780, 456 N.E.2d 267, 275 (4th Dist. 1983). *Decatur* does not address the question, and its opaque discussion of § 9–312(2) could as readily be read to support the FmHA. White & Summers treat it as supporting their interpretation. 2 *Uniform Commercial Code* at 517 n. 4. This is a plausible understanding, because although one passage (on which Salem Bank relies) implies that if sums were over-

due more than six months before planting then the production lender takes priority, another passage says that the production lender prevails "to the extent that [the first] obligation was overdue on January 1", 119 Ill.App.3d at 290, 74 Ill.Dec. at 781, 456 N.E.2d at 276.

Appellate opinions are not like the entrails of sheep, to be read for omens. *Decatur* looks both ways and explains nothing about our question; it is not helpful in understanding (as *Erie* requires us to do) how the Supreme Court of Illinois would decide this question. We think the Supreme Court of Illinois would follow the unanimous view of the courts and commentators who have addressed the question explicitly.*

AFFIRMED.

---

* Salem Bank contends that *In re Cress*, 89 B.R. 163 (Bankr.D.Kan.1988), goes the other way. *Cress* gives a "contra" signal for *Minster* and the bankruptcy court's opinion in our case, but it dealt with a different problem. The crops in *Cress* were planted in the fall, more than six months after an installment to the FmHA became due. When the production lender tried to collect out of the proceeds of the sale, the

FmHA contended that it came first because still a further installment became due *after* the production lender had extended credit. This new installment had not been six months "overdue" —was not due in the first place—at the time the crops were planted. *Cress* held that installments coming due after the production loan were junior to it, a proposition not at variance with *Connor, Minster,* or our decision.